[Civil No. 3230. Filed January 5, 1933.]

[17 Pac. (2d) 809.]

GEORGE P. SILVA and WILLIAM R. SILVA, Appellants, v. CHARLES MENDOZA MENDERSON and MARYLAND CASUALTY COMPANY, a Corporation, Appellees.

Messrs. Moore & Shimmel, for Appellants.

Mr. Luther P. Spalding and Mr. Floyd M. Stahl, for Appellees.

LOCKWOOD, J.—George P. Silva and William R. Silva, hereinafter called plaintiffs, brought suit against Charles Mendoza Menderson and Maryland Casualty Company, a corporation, hereinafter called defendants, to recover damages for certain alleged false and fraudulent representations made by defendant Menderson regarding lands purchased by plaintiffs through the agency of Menderson. Defendants demurred to the complaint on the ground that the action was barred by the statute of limitations, which demurrer was by the court sustained, and plaintiffs electing to stand upon their complaint, judgment was rendered in favor of defendants, and from said judgment this appeal is taken.

The sole question before us is as to whether the cause of action, if any, was barred by the statute of limitations. The complaint is voluminous and we therefore state its substance only as follows: In October, 1925, defendant Menderson was engaged in the business of real estate broker in Phoenix, and, as such, had filed a statutory bond in the sum of $2,500 with Maryland Casualty Company as surety thereon. Shortly thereafter he represented to plaintiffs that he was duly authorized to sell certain lands situated in Yuma county, and commonly known and advertised as "Wellton Mesa Lands," the particular part of such tract involved in this transaction being the northwest quarter of the southwest quarter of section 35, township 8 S., range 17 W., G. & S. R. B. & M. Plaintiffs were nurserymen located in Phoenix and engaged in the growing, culture, and grafting of grape vines and citrus trees for sale as nursery stock,

and desired to establish a nursery for the same purpose in the "Wellton Mesa Lands" as soon as such lands afforded a market for the sale of their commodities, and Menderson was well advised such was their intention.

In attempting to sell them the lands in question, he made many representations, five of which are in substance the ones on which this suit is based. They may be summarized as follows: (1) That the lands in question were above the subflow of the Gila River and beneath them at a depth of not over 150 feet there was a supply of underground water sufficient to irrigate all the lands; (2) that such water had been shown by analysis to be of a quality suitable for irrigation and free of all deleterious content; (3) that there were at the time several wells upon lands adjacent to those offered to plaintiffs which were then supplying abundant pure water at a depth of not over 150 feet; (4) that the Wellton Mesa Land Company, which owned the lands in question, had plotted a large townsite in the close vicinity of the lands and intended immediately to pave all the streets and establish a municipal water and electric light system for the town; (5) that large portions of the project had already been sold for cash and were to be planted at once to citrus and grapes, which would supply plaintiffs an immediate market for the nursery stock they then had in Phoenix and a future market for the nursery which they proposed to establish near Wellton.

Relying on these representations, plaintiffs entered into a contract in November, 1925, to purchase the lands on the installment plan for $2,500, and did eventually pay said sum and become the owners of the premises. From the date of purchase until September, 1931, plaintiffs continued to reside in Maricopa county and never visited the lands purchased

by them or talked with the owners of lands in the vicinity thereof or with any person familiar with the conditions, and continued to believe in the representations so made by Menderson until September, 1931, when they went to Yuma to attend to some matters in regard to the land and for the first time discovered that each and all of the representations above set forth were wholly false. There was a further allegation that they had no knowledge or means of obtaining knowledge that these representations were untrue, but relied wholly upon them and subsequent continued representations to the same effect made by Menderson. To this complaint, as we have stated, the defense of the statute of limitations was interposed. The particular part of the statute relied upon by defendants is set forth in section 2060, Revised Code of 1928, as follows:

"There shall be commenced and prosecuted within three years after the cause of action shall have accrued, and not afterward, the following actions . . . for relief on the ground of fraud or mistake, which cause of action shall not be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

It is agreed by both parties that, assuming as we must for the purposes of this case the allegations of the complaint are to be taken as true, the false representations were made and acted on as of the 17th of November, 1925. It is also agreed that section 2060, *supra,* applies to actions of this nature. If the statute, therefore, commenced to run at the time the representations were so made and acted on, it would have been barred long before the filing of the complaint herein on January 5th, 1932. It is the position of plaintiffs, however, and they so set up in their complaint, that they did not discover the facts constituting the fraud until the year 1931. Defendants

for the purposes of the pleading admit this, but urge that, if plaintiffs had used reasonable diligence, they would have made such discovery within a very short time after the purchase of the land in question, and that the statute therefore has long since run.

We have had before us the question of the interpretation of the statute above quoted in the case of *Guerin* v. *American Smelting & Refining Co. et al.,* 28 Ariz. 160, 236 Pac. 684. Therein we state the law as follows:

"Under our statute, quoted above, the limitation does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud complained of. This statute is not peculiar to Arizona. Its counterpart exists in many of the states, and has often received the attention of the courts. The doctrine deducible from the decisions is that the aggrieved party need not have actual notice of the fraudulent act to start the running of the statute, but, if the facts and circumstances were such *as in the exercise of reasonable care and diligence he should have discovered the fraud,* he is deemed to have notice. Where ignorance of the fraud is due to negligence or indifference or inattention, its discovery will be deemed to date from the time when one exercising reasonable diligence would have discovered it. . . . 'A party seeking to avoid the bar of a statute on account of fraud must aver and show that he used due diligence to detect it. . . . Concealment . . . which will avoid the statute must go beyond mere silence. It must be something done to prevent discovery. . . . Concealment . . . must be the result of positive acts. . . . Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. . . . The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence.' *Wood* v. *Carpenter,* 101 U. S. 135, 25 L. Ed. 807 (quoted in *Phelps* v. *Grady,* 168 Cal. 73, 141 Pac. 926)." (Italics ours.)

The question then is, Would plaintiffs, by the exercise of reasonable care and diligence, have discovered the alleged fraud more than three years before this action was commenced? Many cases have been cited by counsel for both plaintiffs and defendants in their briefs. They all, however, lay down substantially the rule of law above stated, and the final decision in each case necessarily rests upon the facts of the particular case. For this reason, while we have carefully examined all the cases, we think it would be of no practical value in this case to cite and analyze them.

The courts of Arizona take judicial notice of the geographical location of Phoenix, Yuma and Wellton. *Peyroux* v. *Howard,* 7 Pet. 324, 8 L. Ed. 700; *State* v. *Cunningham,* 81 Wis. 440, 51 N. W. 724, 15 L. R. A. 561. And of the distance between those places. *United States* v. *Thornton,* 160 U. S. 654, 16 Sup. Ct. 415, 40 L. Ed. 570. And the location of the land described in the complaint in terms of the public survey. *Rogers* v. *Cady,* 104 Cal. 288, 38 Pac. 81, 43 Am. St. Rep. 100; *Brannen* v. *Henry,* 142 Ala. 698, 39 So. 92, 110 Am. St. Rep. 55. From that we know that the lands in question are situated some 40 miles from Yuma and 160 miles from Phoenix on the main highway between those cities.

The complaint alleges that plaintiffs were engaged in the nursery business and that they purchased the lands in question believing there would very shortly be a demand in and near such lands for the nursery stock which they then had in Phoenix and also for that which they expected to grow in a new nursery on the purchased property. If plaintiffs had made any effort to sell nursery stock to the parties whom they believed had purchased lands adjacent to theirs; to establish a new nursery on the purchased lands for the same purpose, or even to examine the lands or in-

quire at Wellton or Yuma in regard thereto, they must necessarily have found that representations 3, 4, and 5 above set forth were absolutely untrue, and at least been put on reasonable inquiry as to representations 1 and 2. The truth or falsity of the last three representations could be determined by any person on an inspection of the Wellton Mesa for half an hour. If representation 3 was false, then it would be obvious to any intelligent person that representations 1 and 2 were either false or else made recklessly and with no means available for determining their truth or falsity. Was it then the reasonable duty of plaintiffs to make a trip to the lands which they had purchased for the purposes set forth in the complaint or make some inquiry regarding their condition within three years from their purchase? We are of the opinion that since, as they state in their complaint, they expected and intended to sell nursery stock from their Phoenix nursery to settlers on the Wellton Mesa and to establish a nursery on that mesa as soon as there were enough settlers to justify it, reasonable diligence on their part would certainly require that, within three years from the time they entered into their contract to purchase, they should attempt at least to obtain some orders for nursery stock, and, if they secured none, to investigate to find out why not, and, as we have stated, one trip to the land, a distance of four or five hours' drive under modern conditions in an automobile, would unquestionably have informed them as to the truth or falsity of all the representations upon which they had relied. Since they did not use reasonable care and diligence to determine the true facts, they were deemed to have notice thereof, and the statute has long since run. For the foregoing reasons the judgment of the superior court of Maricopa county is affirmed.

ROSS, C. J., and McALISTER, J., concur.