[No. 28605. Department One. April 24, 1942.]

SUBURBAN TRANSPORTATION SYSTEM, *Appellant*, v.
ROY S. FURSE *et al.*, *Respondents.*[1]

[1] Reported in 125 P. (2d) 266.

*Neal, Brodie & Trullinger,* for appellant.

*The Attorney General, Don Cary Smith, Assistant,* and *George E. Mathieu,* for respondents.

STEINERT, J.—This is an appeal from a judgment of the superior court affirming, with a slight modification, an order wherein the state department of public service adjudicated conflicting applications for certificates of convenience and necessity filed by two passenger transportation companies, each seeking to extend its suburban bus service into territory claimed by the other. For convenience, we shall refer to the Suburban Transportation System simply as "the appellant," to the respondent Roy S. Furse by his own

name, and to the respondent department of public service as "the department."

For a number of years past, both the appellant and Furse have operated bus lines between the business district in Seattle and the suburban areas lying north and south of the city, although the appellant has been so engaged for a longer time than Furse, and on a much more extensive scale. Some time prior to April, 1938, Furse made application to the department for a certificate authorizing him to operate over a new route south of the city. The course of this line, for the greater part of its length outside the city, was to run along the extension of First avenue south and have its southern terminus at S. W. 152nd street. It thus would run parallel to and approximately midway between two of appellant's bus lines south of Seattle, to Des Moines and Three Tree Point, respectively.

On April 2, 1938, the appellant and Furse entered into a written contract by the terms of which the appellant agreed not to contest Furse's then pending application for a certificate permitting the operation of busses over this new route, and Furse in turn agreed not to put into effect any rates lower than those specified in the contract (or lower than comparable rates then or thereafter charged by the appellant) unless required by the department, after a formal hearing, so to do. Each party further agreed not to apply to the department for any extension or change of route which would bring their respective services any closer together, and it was stipulated that either party might maintain an action in court for damages resulting from the violation by the other of any of the terms of the contract.

The department granted Furse's application and he accordingly instituted, and for several months thereafter maintained, a bus service over this new route,

but found the business unremunerative. He therefore abandoned the route, with the permission of the department. In April, 1939, however, at the request of a number of residents in the district, he reinstated the service, but altered the route so that it ran down First avenue south only to S. W. 136th street (instead of to S. W. 152nd street, as before), then turned east to Eighth avenue south, thence north to south 112th street, where it turned westward over several irregular streets to First avenue south again, thus forming a rectangular loop. This change brought Furse's service seven blocks nearer to appellant's route along Des Moines way, the more easterly of its two parallel lines south of Seattle.

Although Furse did not have a certificate permitting this change of route, it appears from Furse's testimony that before its inauguration he went to the office of the department at Olympia, in company with Mr. George W. Yost, the appellant's general manager, and procured the permission of the department to initiate trial service over the extended route for the purpose of accommodating the citizens residing in that vicinity, and also for the purpose of determining whether the new venture would pay. Furse further testified that he and Yost had gone over the entire territory together, and that Yost had sanctioned the proposed extension, provided that Furse would go no further east than Eighth avenue south. Mr. Yost admitted that he had discussed the matter in detail with Furse and that he had accompanied the latter to Olympia, but denied that there was any understanding that Furse was to operate over Eighth avenue south; to the contrary, Yost testified that the appellant had for some time intended to extend its own service from Des Moines way over onto Eighth avenue south, and that he had visited Olympia to discuss that

plan with representatives of the department. At any rate, Furse established service over Eighth avenue south and has maintained it ever since, although until recently it has not been profitable. On the other hand, the appellant has never established such service, even for a trial period, although Mr. Yost testified that he and his company had contemplated doing so, but had been prevented by reason of his having been called east. There is in the record a letter, dated March 16, 1939, from Yost to the department, suggesting that the appellant would be willing to institute a very limited trial service on Eighth avenue south, but that the company would be reluctant to make application for a certificate over that route because it might entail permanent obligations and, further, because the venture was not sufficiently attractive to hazard even the expenditure of a twenty-five dollar application fee.

It is clear to us from the record that in April, 1939, Mr. Yost and Mr. Furse, after discussing the matter, went to Olympia together to consult the department about it, and that at that time Mr. Furse was willing to resume his operations over First avenue south and, in addition, to give the community along Eighth avenue south reasonable service, but that Mr. Yost did not care to give equivalent service in that neighborhood. It is also fairly deducible from the record that Mr. Yost would have preferred that no additional bus service at all be established between the appellant's two existing lines in this area.

It appears from the record without material dispute that the distance between Eighth avenue south and Des Moines way varies from a half mile to a mile, that the intervening region is rough and hilly, that only a few of the streets traversing it from east to west are cut through, and that as a consequence it is exceedingly inconvenient for persons living in the vicinity

of Eighth avenue south to avail themselves of the bus service supplied by appellant along Des Moines way.

After Furse's operation over Eighth avenue south had been in effect for several months, the appellant wrote to him on June 16, 1939, protesting against this new service, and claiming that it violated the terms of their previous written contract. The basis of this protest was the claim that Furse's new line detracted from the patronage of appellant's route along Des Moines way. No protest of any kind, however, was made by appellant to the department for more than a year after Furse had begun the renewed service, and then only after he had applied for extensions of service as next related.

On March 5, 1940, Furse filed with the department a formal application for the extension of his certificate to authorize the new service already inaugurated over Eighth avenue south, as well as to permit the institution of service in three other areas surrounding Seattle. The appellant protested this application, and in turn made application for similar extensions of its own certificate in respect to all but one of the areas involved in Furse's application. Furse thereafter countered with an oral protest against appellant's application. The entire matter came on for hearing before the department's supervisor of transportation, and the testimony of many witnesses was taken.

With respect to the service over the rectangular route here in question, and especially that over Eighth avenue south, a large number of residents in that community appeared voluntarily and were unanimous in testifying that the service was absolutely essential, and that the appellant's bus line along Des Moines way was wholly inadequate for their needs and was difficult to use because of the terrain of the country. They further testified that Furse's service had been satisfac-

tory in every respect, and they clamored for its continuance. It is undisputed that service in this locality is essential as well as practicable, and the sole issue now in dispute is as to which of the companies here involved is to be permitted to supply that service.

After the supervisor had heard all the testimony and had personally viewed the areas involved in the respective applications, the department made findings and entered an order granting Furse's application with respect to the extension of service over Eighth avenue south and with respect to another of his lines, south of Seattle (as to which appellant has made no objection), but denying his application with respect to the extensions requested in the area north of the city. It accordingly denied the appellant's request for the extension of its route over Des Moines way, in so far as it conflicted with Furse's rights in the district surrounding Eighth avenue south, but substantially granted all the other extensions requested by the appellant. On writ of review the superior court affirmed the department's order except for a slight modification as to Furse's other southerly route, which is not here in question. Furse has not appealed from the action of the department or of the court, and the appellant in its appeal has challenged only that part of the department's order which granted Furse's application for an extension of service over Eighth avenue south and denied appellant's application for a similar extension.

■ The appellant contends, first, that, in granting Furse's application with respect to service over Eighth avenue south, the department arbitrarily disregarded the contract between Furse and the appellant, thereby violating the latter's rights thereunder. A sufficient answer to that contention is that this is not a law action by the appellant against Furse, nor does this proceed-

ing partake of the nature of an action for breach of contract. It is simply a proceeding brought under Rem. Rev. Stat., Vol. 7A (Sup.), § 6392 [P. C. § 234-8], wherein the department was asked, and was required by law, to determine which of two contesting applicants should be granted an extension of its certificate of public convenience and necessity authorizing the maintenance of bus service in the particular area here involved. The department was in no sense bound by the parties' private agreement concerning the establishment of routes and tariffs as between themselves, but was authorized and compelled to determine all such matters in the manner provided by statute, which is precisely what it has done.

Furthermore, the appellant never contended in any of the proceedings below that the department was required to give effect to the contract. The instrument was not offered in evidence for that purpose, but merely for the purpose of developing the history of this dispute, upon the statement by appellant's counsel that

"This is not in any way an attempt to enforce the contract, but to show the history and the development of the transportation service."

Mr. Yost, on being asked whether the contract was valid, replied:

"Yes, as between Mr. Furse and our company. Nothing to do with the Department,—the Department does not have to recognize it."

We consider appellant's first contention wholly without merit.

Appellant next contends that the department arbitrarily granted Furse's application upon the basis of his prior illegal service along Eighth avenue south; the term "illegal service" is used in the sense that at the time of its rendition by Furse he had not yet ob-

tained from the department a certificate of convenience and necessity authorizing him to operate over that route. In support of its argument upon this contention, appellant cites the case of *Deppman v. Department of Public Works,* 151 Wash. 78, 275 Pac. 70, where we held that under chapter 111, p. 341, Laws of 1921, § 4 (now appearing as Rem. Rev. Stat., Vol. 7A (Sup.), § 6390 [P. C. § 234-6]) such prior illegal service by an auto transportation company within a given territory does not, *as a matter of law,* confer any preference right to a certificate of convenience and necessity subsequently applied for by such company. We concede that such is still the law. In fact, we further elucidated that rule in the later case of *Denman v. Department of Public Works,* 157 Wash. 447, 289 Pac. 34, 291 Pac. 1115, by saying:

"The better rule, and the only one we are disposed to recognize, is that operations in a new territory in advance of the granting of any certificate should neither entitle the operator to a certificate nor bar him therefrom. In other words, industry must be served, and if it be served without the violation of the rights of others, the department should neither reward nor punish the one who so serves it."

It will be recalled that Furse initiated the service over Eighth avenue south as a trial operation, with the sanction of the department, for the express purpose of accommodating the residents of that community and of determining whether it could be made a paying proposition and thereby warrant an application for a certificate. The department did not award Furse the preference right on the theory that he was entitled to it *as a matter of law* merely because he had previously operated over the route in question for about a year. It simply took that fact into consideration, together

with all the other relevant facts and circumstances. This the department clearly had the right to do.

In this connection, appellant further contends that, under Rem. Rev. Stat., Vol. 7A (Sup.), § 6390, the department had no power or authority to grant Furse a certificate to operate over Eighth avenue south, so long as the appellant was itself willing to provide satisfactory service over that route. The statute reads, in part, as follows:

"The commission [department] shall have power, after hearing, when the applicant requests a certificate to operate in a *territory already served by a certificate holder under this act,* only when the existing auto transportation company or companies serving such territory will not provide the same to the satisfaction of the commission [department]. . . ." (Italics ours.)

This contention is of course based on the claim by appellant that the territory adjacent to Eighth avenue south was already being served by its bus line running along Des Moines way. However, the department found that appellant's service along this latter route did not meet the needs and requirements of the public in so far as Eighth avenue south was concerned, and that it was not serving *that* territory within the meaning of the statute.

The question as to what constitutes "territory already served" within the contemplation of a statute such as this is a question of fact and is to be determined from a consideration of economic as well as of legal principles. See, *Puget Sound Navigation Co. v. Department of Public Works,* 152 Wash. 417, 278 Pac. 189; *State ex rel. Puget Sound Navigation Co. v. Department of Public Works,* 164 Wash. 237, 2 P. (2d) 686; *State ex rel. Puget Sound Navigation Co. v. Department of Public Works,* 165 Wash. 444, 6 P. (2d) 55. In the first of the cases just cited, we said:

"The question, what is territory already served, is a question of fact. Before that fact can be determined, it requires consideration of economic conditions, ofttimes involving expert testimony; a consideration of the kinds, means and methods of travel; the question of population warranting additional facilities for transportation, or the possibilities of the additional means of transportation increasing the population so as to ultimately make the venture a success."

In addition to those factors, it often becomes necessary, as in this instance, to consider also the topography, character, and condition of the country into which the service is to be introduced, and its relation to the nearest territory through which transportation service is already supplied. All of these factors were considered by the department in its determination that the area surrounding Eighth avenue south was not "territory already served" by appellant. The record does not enable us to say that the finding of the department was in that respect arbitrary and capricious, and, therefore, we will not disturb that finding.

Appellant's next contention is closely akin to the one just considered, and is to the effect that the department arbitrarily granted Furse the preference right in the area in question upon the mistaken theory that he had "pioneered" that territory. It is true that the department in its findings stated that Furse had "pioneered" the territory, but that conclusion was coupled with the preceding finding that the appellant's existing service did not meet the needs and requirements of the public and did not serve the particular territory involved. It was not upon any one fact alone, but upon all the facts and circumstances shown to exist, that the preference right was awarded to Furse. In cases such as this, there is a presumption that the department has acted reasonably and lawfully, and the contrary must clearly appear before its

order can be set aside upon review. *State ex rel. Great Northern R. Co. v. Railroad Commission,* 60 Wash. 218, 110 Pac. 1075; *State ex rel. Great Northern R. Co. v. Public Service Commission,* 81 Wash. 275, 142 Pac. 684; *Dryden Commercial Club v. Department of Public Works,* 142 Wash. 317, 252 Pac. 911; *State ex rel. Model Water & Light Co. v. Department of Public Service,* 199 Wash. 24, 35, 90 P. (2d) 243, 249, and cases there cited. It does not appear to us that the action of the department in this respect was arbitrary or capricious.

The appellant argues, finally, that the department unlawfully required it to furnish service over a route not requested in its application for extension of its certificate. This contention grows out of the fact that, when the department granted Furse's request with respect to extension of his service over Eighth avenue south, and correspondingly denied appellant's application in that particular, it contemporaneously granted appellant permission to run its busses over an alternative route in that general area, but farther to the east. Appellant therefore argues that it is being required to maintain a service in a locality where it does not wish to operate, and over a route as to which the record makes no showing of convenience and necessity. Several answers may be made to this contention. First, the question was not raised in the superior court, and it therefore cannot be raised for the first time on this appeal. In the second place, the department's specification of the alternative route was simply a grant of authority to institute such a service if the appellant should so desire, and did not constitute a mandatory order to supply service over the designated course. And, finally, the appellant is under no obligation to accept the grant, but may continue to operate as it has in the past, until

and unless in a proper proceeding brought for that purpose it is hereafter required to furnish additional service in its territory.

The judgment is affirmed.

ROBINSON, C. J., MAIN, BLAKE, and DRIVER, JJ., concur.

