169 P.2d 511

## CORPORATION COMMISSION et al. v. PACIFIC GREYHOUND LINES.

### No. 4813.

Supreme Court of Arizona.

May 27, 1946.

John L. Sullivan, Atty. Gen., Harry O. Juliani, Asst. Atty. Gen. (Jerman & Thurman, and James E. Flynn, all of Phoenix, of counsel), for appellants.

Baker & Whitney, of Phoenix, for appellee.

Tom Fulbright, of Florence, for amicus curiæ Town of Florence and Florence Chamber of Commerce.

Lee Garrett, of Tucson, for amicus curiæ Tucson Chamber of Commerce.

STANFORD, Chief Justice.

For convenience we will style the parties herein as they were in the superior court.

On the 30th day of November, 1942, L. A. Tanner made application to the Corporation Commission of Arizona for a certificate of convenience and necessity to operate motor vehicles in the common carriage of passengers and baggage for compensation over U. S. Highway 80-89 between a certain government cantonment camp, which is a few miles north of Florence, Arizona, and Florence and Tucson, Arizona, and to serve all intermediate points. On the 12th day of January, 1943, the Corporation Commission after hearing,

at which plaintiff appeared, issued and entered its opinion and order granting the application of said Tanner and granting a certificate of convenience and necessity as requested in his application, but not including service between the cantonment camp and Florence. After denial of motion for rehearing the plaintiff filed an action in the superior court of Maricopa County, Arizona, asking that the said order made by the Arizona Corporation Commission be set aside and vacated.

After filing of answer by defendant and after trial, judgment was rendered for plaintiff following which defendant filed its motion for rehearing and upon its denial, brings this appeal.

Defendant's assignments of error are: (1) That the court erred in rendering judgment for plaintiff "for the reason that appellee failed to introduce any evidence to sustain the burden of proof, showing that the order of the Corporation Commission was unreasonable, or unlawful." (2) The court erred in its judgment since "Appellee has no rights over U. S. Highway 80-89 from Tucson to Florence via Oracle Junction and Cantonment Camp near Florence, and further that L. A. Tanner does not operate over Appellee's route or render duplicate service thereon, nor does Tanner encroach upon the territory of appellee as an existing certificated carrier."

The plaintiff called but one witness in the hearing before the defendant, and by stipulation the transcript of evidence taken before the defendant Corporation Commission was submitted in the case in the superior court, no new evidence being introduced.

Defendant cites Section 69-249, A.C.A. 1939, from which we quote: "* * * In all trials, actions and proceedings the burden of proof shall be upon the party adverse to the commission or seeking to vacate or set aside any determination or order of the commission to show by clear and satisfactory evidence that the same is unreasonable or unlawful * * *".

In this respect from our case of Corporation Commission v. Southern Pacific Co., 55 Ariz. 173, 99 P.2d 702, we quote: "Under section 720, supra (Sec. 69-249, A.C.A. 1939), it was necessary for the company to establish that the order of the commission denying the application to discontinue the service in question was unreasonable. We have considered the meaning of this section and its application in the case of Corporation Commission v. People's Freight Line, Inc., 41 Ariz. 158, 16 P.2d 420, 421. Therein we said: 'It will be seen, upon examining the language of this section, that the proceeding is not an appeal from the decision of the commission, but it is a new and independent action. The case is heard de novo upon such evidence as may be proper, and not merely upon a review of the evidence taken before the commission. Such being the case, the trial court is not bound by the rule followed on an appeal by this and by most

appellate courts to the effect that, if any reasonable evidence sustains the order of a lower tribunal, an appellate court will not consider and review the weight of the evidence, or the inferences drawn therefrom by the trial court. The superior court in this proceeding had the right to form its own judgment as an independent tribunal as to the conclusion to be drawn from the evidence, subject only to the rule laid down in section 720, supra, that the burden of proof is on the plaintiff to show by clear and satisfactory evidence that the order of the commission is unreasonable or unlawful.' "

At the time of the hearing before the Corporation Commission the only means of travel between Florence and Tucson, except by private conveyance, was by the Greyhound route, from Florence to Coolidge, then to Tucson by the way of Picacho, Red Rock and Marana. Mr. Bobo, the superintendent for plaintiff, in his testimony before the Corporation Commission which was adopted by the superior court stated that the traffic conditions were very poor, that his line, the Greyhound, was operating to capacity and was taxed beyond capacity. Witness Bobo also testified as follows: "Commissioner Wright: Do you have any rights over this route? (Meaning the route from the government cantonment to Tucson by the way of Oracle junction.) A. No, sir."

From the foregoing it is contended by defendant that the plaintiff has failed to carry the burden of proof in this case, the only witness for plaintiff stating that it had no rights over the route that Tanner desired.

Under the second assignment of error of the defendant it quotes Section 66-506, A.C.A.1939, from which we quote in part: "* * * If, after a hearing on the application, the commission finds from the evidence that the public convenience and necessity required the proposed service, or any part thereof, and that the applicant is a fit and proper person to receive such certificate, it may issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought, and may attach to the exercise of the right granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require; provided, that when an applicant requests a certificate to operate over a route, or routes, or in a territory already served by a common motor carrier, the commission shall have power, after hearing, to issue such certificate only when the existing common motor carrier operating over such route, or routes, or serving such territory, will not provide such service as shall be deemed satisfactory by the commission."

Our case of Corporation Commission v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443, 451, says: "* * * It (Corporation Commission) should first have examined the new service offered by the applicant and determined whether it is more in the interest of the traveling public than

that furnished by the plaintiff. If its answer is in the affirmative, it should then offer to the plaintiff an opportunity to furnish such new service, and if plaintiff can, and will, do so, should deny the application. If it cannot, or will not, furnish it, and the new service offered can reasonably be separated into two parts, one being a service which can, and will, be furnished by. the plaintiff, and the other one which, for any reason, is beyond its power to furnish, and this separation will not injure the interests of the traveling public, the commission should then issue a certificate authorizing the applicant to carry on such portion of the service as it is beyond the power of the plaintiff to furnish, but prohibiting it from giving such service as can, and will, be given by the plaintiff. If, however, the new service offered cannot thus be reasonably separated, the commission should then issue the certificate of convenience and necessity for the new service to the applicant. This course preserves as the paramount consideration the benefit to the traveling public, while still protecting the interest of the existing certificate holder so far as it can be without injury to that public."

In the denial of the application for re-hearing of the instant case before the Corporation Commission the defendant commission said:

"There can be no question as to the need for the service. The record is conclusive that there is such a need. The intermediate area is now wholly without transporta-tion facilities. This condition should not be perpetuated. Our order is fully justified and sustained by the facts.

"The protestant, Pacific Greyhound Lines, does not operate over this route; hence, there is no duplication of service or an encroachment upon the territory of the protestant of which it may complain. We are of the opinion and find that the application for a re-hearing should be denied."

One of the main contentions of the plaintiff as set forth in its complaint filed in the superior court is: "* * * That the plaintiff during all of said times has maintained and operated said common carrier business between said points and stations, and during all of said times its service has been and now is ample, sufficient and adequate to meet all reasonable public requirements; and if any further, additional or enlarged service is reasonably required by the public the plaintiff is ready, willing and able to supply the same."

And a further contention is, taken from plaintiff's argument and not the complaint, as the first contention: "* * * the Commission shall have power to issue such certificate only when the existing common motor carrier operating over such route or routes, *or serving such territory,* will not provide such service as shall be deemed satisfactory by the Commission. This statute is different from many other state statutes regulating issuance of certificates of convenience and necessity to motor carriers in that it not only prohibits the issuance of du-

plicate certificates over routes occupied by an existing carrier, but also prohibits the issuance of duplicate certificates *to serve the same* territory served by an existing carrier."

It therefore may be understood that plaintiff at no time gives service over the route from Florence to Tucson by the way of Oracle Junction, but does say, and it is one of its main points, that the law of Arizona prohibits "the issuance of duplicate certificates over *routes* occupied by an existing carrier", and "prohibits the issuance of duplicate certificates to serve the same territory served by an existing carrier."

The widest point between the two routes is about 15 miles; the condition of the country between the two is very rough and there are no public highways between Florence and Tucson on U. S. Highway 80-89 that lead to the route now traversed by the plaintiff. There are some small towns to the east of U. S. Highway 80-89 over which the defendant now seeks a permit, and people coming from those places, unless they have their private cars, would have no means of conveyance to Florence, the county seat of Pinal County, or to Tucson, the second largest city in the State and the county seat of Pima County. Also along the highway 80-89 are ranches and other places where persons come from who are in great need of a method of travel to either Tucson or Florence when they enter said highway.

Through the willingness of counsel on both sides stipulations have been entered in-to from time to time for extension of time for the filing of various briefs in this case, and since the filing of this case before the Corporation Commission and this time, although the peak of the selective draft system has ended, this court takes notice that travel conditions are crowded over most highways in our state.

The question of what does constitute "territory served" by a transportation system is a question of first impression in this state and whether or not the territory just now mentioned by us is served by the plaintiff herein is the important question for our determination.

Some years ago the route of plaintiff over U. S. Highway 80-89 was abandoned by plaintiff. And now because of the roughness of our country; the great heat of our long summers; and the great number of people who need the services offered by Tanner, it is impossible under the law and facts of the case for us to say that U. S. Highway 80-89 is territory served by the plaintiff.

Among the towns lying in an easterly direction and whose traffic taps U. S. Highway 80-89 are Oracle, Tiger, Winkelman and Hayden.

The case of Gilbert v. Public Utilities Commission of Ohio, 131 Ohio St. 392, 3 N. E.2d 46, 48, is an appeal from an order of the Public Utilities Commission of the State of Ohio granting an application for amendment of the regular intrastate certificate of the transportation company to

transmit the transportation of property by motor vehicle between the cities of Springfield and Dayton, Ohio, by the way of Xenia over State Routes Nos. 68 and 11. The certificate as originally issued authorized such transportation only between Springfield and Xenia over State Route 68.

While the statement of the case is long for its purpose we feel that the foregoing, together with the following opinion of the court, will suffice:

"3. Section 614-87 General Code, provides in part: 'On finding of the public utilities commission that any motor transportation company does not give convenient and necessary service in accordance with the order of such commission such motor transportation company shall be given a reasonable time, not less than sixty days, to provide such service before any existing certificate is cancelled or a new one granted over the route or for the territory mentioned in the finding and order of or hearing before the public utilities Commission.'

"The commission found such section not to be pertinent because the protestants did not operate over the route or serve the territory that would be served if the application of the transportation company were granted.

"It is pointed out that if the protestants were permitted to provide the service as contemplated by the application in question, they would acquire the arbitrary right to operate between Springfield and Xenia, which is territory foreign to their authorized and established routes.

"Furthermore, the commission reiterated its previous observation that under the circumstances of the case the extension of the motortruck operation between Xenia and Dayton was but an improved and more convenient substitute for the traction service to be abandoned.

"We therefore agree with the commission on the inapplicability of section 614-87, General Code, to the situation under examination."

In addition to the foregoing defendant has cited the cases of Wheeling St. Clarisville & Cambridge Transp. Co. v. Public Utilities Commission of Ohio, 125 Ohio St. 209, 180 N.E. 901 and Texas Motor Coaches, Inc. v. Railroad Commission of Texas, 123 Tex. 517, 73 S.W.2d 511.

Arizona is now committed to the rule of controlled monopoly with reference to the issuance of certificates of convenience and necessity to common carriers. It is our view that the permit granted to Tanner over U. S. Highway 80-89 between Florence and Tucson by the way of Oracle Junction is a grant of franchise to operate over an entirely new territory and definitely not over a territory served.

Herein we therefore hold that U. S. Highway 80-89 from Florence to Tucson by the way of Oracle Junction is not a route served by the plaintiff herein, the Pacific Greyhound Lines.

Judgment reversed.

MORGAN, Judge (specially concurring).

The Chief Justice has set out all the pertinent facts. From what has been said, it is evident that only one real question is involved, and that is whether under the proviso of section 66-506, A.C.A.1939, the phrase "or in a territory already served by a common motor carrier" applies in this case. To put it otherwise, the question is this: If a motor carrier holds a certificate of convenience and necessity over a certain road between two cities, and a subsequent applicant petitions the commission to carry passengers and baggage between said cities over an entirely different route, must the commission first give the prior certificate holder an opportunity to provide such service between such cities over the new and different route?

The corporation commission is the constitutional body which alone has the right to issue certificates of convenience and necessity. Northeast Rapid Transit Co. v. Phœnix, 41 Ariz. 71, 15 P.2d 951. The legislature has the power to limit the rights of the commission in the issuance of certificates and they may be issued only in compliance with the legislative acts. Arizona Corp. Comm. v. Hopkins, 52 Ariz. 174, 79 P.2d 946. However, any law or act which limits the constitutional or general lawful powers of the commission is a restrictive measure and must be strictly construed. The proviso cannot be held to apply to situations not covered by its terms or beyond its plain intendments. 50 Am.Jur. 458, sec. 437, Statutes.

The proviso "or in a territory already served by a common motor carrier" applies against a route carrier, from one terminus to another, which attempts to extend its service in such a manner as to do a local business at one of the termini where such local business is already under a certificate of convenience and necessity to another motor carrier. Betts v. Roberts, 63 Ariz. 337, 162 P.2d 423. Thus, the fact that the applicant in that case was carrying freight into and from the terminus over a designated route did not authorize it to extend its service within the terminus so as to compete with a local trucker who held a certificate of convenience and necessity for trucking privilege within a 25 mile radius of the terminus. Under these circumstances, it was held that as a predicate to the issuance of the certificate of convenience and necessity to the applicant, the vicinity motor carrier must be given an opportunity to provide the service deemed satisfactory to the commission.

It is settled that where one carrier has a certificate of convenience and necessity to operate over a route or routes to serve two or more points, that no certificate can be issued to a later applicant over such route to serve the same places, except upon a showing of convenience and necessity, and only after the existing carrier is given the opportunity to provide for the service which is deemed satisfactory to the commission. Corporation Comm. v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443; Corporation Comm. v. People's Freight

Line, Inc., 41 Ariz. 158, 16 P.2d 420. The same rule applies in the case of an existing territorial or vicinity carrier. Arizona Corporation Comm. v. Hopkins, supra.

It is my view that the phrase "or in a territory already served by a common motor carrier" was never intended to and does not mean that the termini alone constitute "territory" within the meaning of the proviso. The "territory" consists of the termini and the route served. Where the termini is to be served by a wholly different route, opening up new country, the result is a new territory, and the fact that both the old and new carriers will serve the termini does not bring the case within the exception. The defendant's certificate as issued by the commission over highway 80 and 89, a wholly different and separate route and territory from that over which the plaintiff operates, was not unauthorized as being in violation of the provision of the statute which requires opportunity to the existing motor carrier serving such territory to first provide for such service.

Any other construction would lead to absurdities. If a motor carrier secures a certificate of convenience and necessity to carry passengers and baggage between two points over a certain road, and later other roads are constructed between the two points, opening up new and different territory, there is no reason why the first certificate holder should have the prior right to operate over such new and additional roads. If the carriage of passengers and baggage into a certain city is to be construed, as applying to that city, as territory served, then logically if a new road is constructed which opens up altogether different territory and connects the terminus with another city, the certificate holder would be entitled to the first right to put in the service over the new road. Thus, for instance, a certificate holder having the right to carry passengers and baggage between Phœnix and Gila Bend to Ajo, would also have the first right, if a new road were opened between Ajo and Yuma, to operate its service over that road, if the necessity so required. It seems obvious to me that the phrase "or in a territory already served by a common motor carrier" means just what it says, the transaction of business or transportation from one point to another in that particular territory. It does not mean transportation into and out of a particular place.

By so holding we are not departing from the rule of regulated monopoly rather than the competitive system. Corporation. Comm. v. People's Freight Line, and Corporation Comm. v. Pacific Greyhound. Lines, supra. As we said in the latter case, "It would be an abuse of discretion to authorize a competing carrier to enter into a certain class of business so long as an existing carrier, with a prior certificate of convenience and necessity for that class of business, furnished proper service."

Under the provisions of section 66-506, supra, before a certificate may be issued.

to any applicant, the evidence must show that the public convenience and necessity requires the proposed service. Here the evidence unquestionably disclosed the convenience and necessity of the proposed service over the new route. If the plaintiff had been adequately furnishing all service necessary between Tucson and Florence over its route, and there was no necessity shown for the service over the proposed route, the permit could not have been issued, because in that case there would be no showing of convenience and necessity. Under such circumstances it would be an abuse of discretion for the commission to issue the new permit under the rule heretofore announced by this court. It seems to me that the rights of a route carrier from one point to another may properly be protected under this rule. The point is that the statute does not give to the prior carrier over an established route between two points the first right to initiate service over a wholly new and different route. Whether a permit shall be issued to the new applicant is largely within the discretion of the commission.

The evidence before the commission and the court, as already stated, showed the public convenience and necessity for the proposed service over highway 80–89. The fact that neither the commission nor the court made any finding to this effect is immaterial. It is the evidence rather than the findings which must control. There is nothing in the evidence to indicate that the issuance of the certificate would constitute an abuse of discretion. The testimony was sufficient to justify a finding that the plaintiff was not adequately furnishing all service necessary between Tucson and Florence, and that the public convenience and necessity required the service over highway 80–89.

For the reasons stated in the opinion of the Chief Justice, and as supplemented by this concurring opinion, the judgment should be reversed.

LA PRADE, Judge (dissenting).

I dissent from the conclusions reached in the application of the facts to the law. I have no quarrel with the analysis of the applicable statutes, as stated by Justices Stanford and Morgan. Justice Morgan states that "The testimony was sufficient to justify a finding that the plaintiff was not adequately furnishing all service necessary between Tuscon and Florence." *The Corporation Commission did not find that public convenience and necessity required further or additional service than that furnished by appellee between Florence and Tucson or between Tucson and Florence.*

The legal foundation, if any exists, to support the order of the commission granting the certificate, must be on its finding that the territory to be traversed by the applicant was not being served. This must be so, in view of Section 66-506, A.C.A. 1939, which provides in part, " * * * that when an applicant requests a certificate to operate over a route, or routes, or

in a territory already served by a common motor carrier, the commission shall have power, after hearing, to issue such certificate only when the existing common motor carrier operating over such route, or routes, or serving such territory, will not provide such service as shall be deemed satisfactory by the commission."

The sum and substance of the testimony of all the witnesses was that the service afforded by appellee between Florence and Tucson was inadequate. Soldiers on leave from the cantonment camp two miles north of Florence had caused a traffic jam. The busses were over-crowded and often times prospective passengers had to be rejected. If the commission had made a finding to the effect that the existing service was inadequate, it then would have been compelled to issue an order to the appellee requiring additional busses and different timing of schedules. This is the method provided by statute for the relief and protection of the traveling public. The best that can be said of all of the evidence is that the town of Florence required some bus service between Florence and the towns of Oracle, Tiger, Mammoth, Sombrero Butte, Copper Creek, Aravaipa, and Feldman. L. A. Tanner, the appellant, did not apply for, and by the certificate complained of was not given any rights to serve these communities and towns. The closest he comes to such communities is Oracle Junction, which is about 12 miles from Oracle, 24 to 25 miles from Sombrero Butte, 36 miles from Copper Creek, and 37 miles from Feldman.

If it can be said that there is some ground for establishing a bus line between places such as Tiger, Mammoth and Florence, there was absolutely no reason for the Commission allowing through service between Florence and Tucson. That condition should have been taken care of by the Commission granting a certificate to Mr. Tanner permitting the carriage of passengers between Tiger, Mammoth and Florence, but prohibiting the carriage of passengers between Florence and Tucson— in other words, prohibiting through service between the termini. This is frequently done in granting certificates of convenience and necessity and is within the contemplation of our statute and decisions of this Court. The statute (Section 66-506, A.C.A. 1939) provides that the Commission may issue a certificate as prayed for "* * * or issue it for the partial exercise only of the privilege sought, and may attach to the exercise of the right granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require. * * *" The Supreme Court in Corporation Commission v. Pacific Greyhound Lines, 54 Ariz. 159, 178, 94 P.2d 443, 451, in discussing the granting of partial or restricted rights, stated: "We think the general propositions of law thus stated are correct, but the record does not show either that the plaintiff failed to furnish any service which it was directed to, or

that it was unable to furnish the service offered by the applicant, or that the commission, when it had determined what service public convenience and necessity required, gave the plaintiff an opportunity to furnish it. The proper procedure to be followed by the commission, under the circumstances set forth in the record, was as follows: It should first have examined the new service offered by the applicant and determined whether it is more in the interest of the traveling public than that furnished by the plaintiff. If its answer is in the affirmative, it should then offer to the plaintiff an opportunity to furnish such new service, and if plaintiff can, and will, do so, should deny the application. *If it cannot, or will not, furnish it, and the new service offered can reasonably be separated into two parts, one being a service which can, and will, be furnished by the plaintiff, and the other one which, for any reason, is beyond its power to furnish, and this separation will not injure the interests of the traveling public, the commission should then issue a certificate authorizing the applicant to carry on such portion of the service as it is beyond the power of the plaintiff to furnish, but prohibiting it from giving such service as can, and will, be given by plaintiff.* If, however, the new service offered cannot thus be reasonably separated, the commission should then issue the certificate of convenience and necessity for the new service to the applicant. This course preserves as the paramount consideration the benefit to the traveling public, while still protecting the interest of the existing certificate holder so far as it can be without injury to that public." Emphasis mine.

In view of the allegations contained in the complaint, and the admissions made, appellee submitted its case to the Superior Court on the record made before the Corporation Commission. In Arizona a person dissatisfied with an order or decision of the Arizona Corporation Commission does not have the matter reviewed by an appeal, but attacks the decision in a new and independent action under Section 69-249, A.C.A.1939. The Superior Court in which the proceeding is instituted is not bound by the rule followed on appeal, but has the right to form its own judgment as an independent tribunal. This is clearly established in the case of Corporation Commission v. People's Freight Line, 41 Ariz. 158, 16 P.2d 420, 421, wherein the court said:

"It will be seen, upon examining the language of this section, that the proceeding is not an appeal from the decision of the commission, but it is a new and independent action. The case is heard de novo upon such evidence as may be proper, and not merely upon a review of the evidence taken before the commission. Such being the case, the trial court is not bound by the rule followed on an appeal by this and by most appellate courts to the effect that, if any reasonable evidence sustains the order of a lower tribunal, an appellate court will not consider and review the

weight of the evidence, or the inferences drawn therefrom by the trial court. The superior court in this proceeding has the right to form its own judgment as an independent tribunal as to the conclusion to be drawn from the evidence, subject only to the rule laid down in section 720, supra, that the burden of proof is on the plaintiff to show by clear and satisfactory evidence that the order of the commission is unreasonable or unlawful.

"There are some states, it is true, which hold that a trial court reviewing the action of a commission authorized to regulate public service companies is bound by the rule which we have referred to above as being followed by us in appeals, but it will be found upon examination of the cases cited by defendant to this effect that the proceedings involved were in the nature of appeals rather than trials de novo."

The Superior Court Judge, in setting aside the order of the commission, must have concluded from the evidence submitted that no new or additional territory was to be served. The question is, Was he justified in reaching such a conclusion? From a careful examination of all the testimony submitted, it appears to me that the chief complaint was that the appellee, Pacific Greyhound Lines, was not furnishing adequate service between Florence and Tucson, and Tucson and Florence. It was definitely made to appear that there were insufficient busses to carry passengers and baggage between these two points. If such was the case, then under the statutes and the existing interpretations thereof, the appellee should have been required to furnish additional service. The applicant, Tanner, realized this situation and attempted to avoid the requirements of the statute by showing that there was a need for transportation of passengers and baggage from Oracle, Mammoth and Tiger, all lying 25 miles or more north of the highway. One witness for the applicant testified that all that up-country, meaning Hayden, Winkleman, Tiger, Mammoth, and Oracle, "trade about 100% in Tucson." At the time the application for the certificate was filed, the Arizona Express, Inc., under a certificate issued by the commission, was operating a passenger and express service between Tucson and Oracle Junction, over highway 89, and thence to Oracle, Mammoth and Winkleman over highway 77.

Counsel for appellant has suggested that it is fundamental that an appellate court will take judicial notice of the geographical location of cities and towns connecting highways, and typographical features of any area in question, citing Silva et al. v. Menderson, 41 Ariz. 258, 17 P.2d 809; Mogle et al. v. Moore et al., Cal.Sup., 104 P.2d 785; Osborn v. Mitten, 39 Ariz. 372, 6 P.2d 902; Kansas City Ry. Company v. Wood, 126 Okl. 275, 259 P. 262, 263. The appellant also suggests under the authority of First National Bank of Clifton v. Clifton Armory Company et al., 14 Ariz. 360, 128 P. 810, Ann.Cas.1915A, 1061, that this court exercise its judicial prerogative

and conduct an autoptic inspection of the area in question. Relying on these cases, I do take judicial knowledge of the fact that there is an uninhabited, wide expanse of desert between Florence and Tucson. The Pacific Greyhound Line operates over a paved highway serving several communities, and which is at most approximately nine miles longer than the road from Florence to Tucson over highways 80 and 89. Approximately 25 miles of the latter highway is not paved. The only new or virgin territory encountered in going from Florence to Tucson by Oracle Junction is the filling station at Oracle Junction, which constitutes a wide place in the road. I am convinced in my own mind that if there are any ranchers off the highway between Florence and Tucson on highways 80-89, they would not drive their cars to the highway and park them behind a mesquite bush and take the bus into Florence or Tucson, as the case might be. If a rancher has any business in either of those two cities, it is to attend to his business and gather supplies. He certainly will take his automobile or truck to accomplish those purposes. Not one witness was called from Winkleman, Hayden, Mammoth, Oracle, or Tiger. No such witness was called to establish that he would drive his car from any of those points to the highway and park it and embark upon a bus of the applicant to go either to Tucson or Florence. The Attorney General, in his brief in support of the appeal, and in reference to the contemplated passengers to be served, states as follows: "The Greyhound route is from Florence, through Coolidge, Picacho, Red Rock, and to Tucson, while Tanner's route is via the old Florence Highway through Oracle Junction, being routes 80-89. This Court will take judicial notice that the Southern Pacific operates a railroad between the two routes. Also, there is a range of mountains between the appellee's route and the route of appellants; Arizona has fences along each route to prevent cattle from entering on the highways in this section of the State. There seems to be a trail running from Cadillac Wash to Red Rock. *People who travel on buses usually do not have cars. So, if the territory served by Greyhound is extended to include appellant's territory by some new process of legal deductions, then, all that the people will have to do to get on a bus is to walk across country, over hills and mountains, be on the look out for jumping cactus and dodge rattlesnakes, carry their own water supply and be sure to have a compass for protection against getting lost, cross the Southern Pacific tracks, climb through three barbed wire fences, wait for a Greyhound bus which will probably not even have standing room in it."* (Emphasis mine.)

I am compelled to ask, *what people* are going "to walk across country, over hills and mountains, be on the look out for jumping cactus and dodge rattlesnakes, carry their own water supply, and be sure to have a compass for protection against getting lost, cross the Southern Pacific

tracks, climb through three barbed-wire fences," travel rabbit trails to embark upon one of the busses proposed to be operated by the applicant over the highway via Oracle Junction.

Mr. Tanner was asked this question on the hearing before the Commission: "If you thought the only business you would get would be out of Oracle and Mammoth, you would not be interested, would you?" Answer: "I am not prepared to say." This was an equivocal answer, and equivalent to saying that he certainly would not be interested. The appellant was solely interested in taking away from the Greyhound Lines a portion of its business, and carrying passengers and baggage from Florence to Tucson and Tucson to Florence. The applicant had a permit from Phoenix to Florence, through Chandler, over highway No. 87. The permit of the appellee was from Phoenix to Florence over highways 60-80-89-70 via Florence Junction. If the applicant is successful in getting a certificate to operate over highways 80 and 89, via Oracle Junction, he would then have a through permit from Tucson to Phoenix.

We now come to the question, "What is the territory to be served?" I submit that 99% of the territory to be served is Florence and Tucson. If the applicant is granted the permission to operate between Florence and Tucson, not one half of 1% of his business will be developed on intermediate points between Tucson and Florence via Oracle Junction. If the certificate is granted to him, he will be authorized to compete for any percentage of the business that has heretofore been available to the appellee. Under the guise of being in a position to serve people 25 to 50 miles off the highway, he will be licensed to engage in a cut throat activity which is not sanctioned under the law of controlled monopolies. The majority opinion ignores the fact that the state of Arizona, as well as the United States of America, and practically every state in the union, long ago established the fact that it is the public that is most interested in the operation of public service corporations, and the interests of the public require such businesses to be operated by regulated monopolies. For such reason the carrier first in the field is protected in his business, not for the purpose of perpetuating his business or preventing competition, but for the purpose of protecting the interests of the public. As so well said by the Supreme Court in Corporation Commission v. Pacific Greyhound Lines, supra, 54 Ariz. at page 178, 94 P.2d at page 451: " * * * As we have stated, the regulated monopoly, which is the public policy of the State of Arizona, was not established primarily for the benefit of the public service corporations affected thereby, but for the benefit of the general public, any benefits accruing to these corporations being merely incidental to the principal object of the rule. Such being the case, when the question involved is the carrying out of this public

policy by a public agency, we think that no question of estoppel as between the carriers can arise, and that the commission must determine whether the certificate applied for shall issue on the basis laid down by the law."

Chief Justice Stanford, in support of his conclusion that the commission was correct in determining that the applicant proposed to serve virgin territory, cites the following cases: Gilbert v. Public Utilities Commission, 131 Ohio St. 392, 3 N.E. 2d 46; Wheeling, Clarissville and Cambridge Transp. Company v. Public Utilities Commission of Ohio et al., 125 Ohio St. 209, 180 N.E. 901; and Texas Motor Coaches Inc. v. Railroad Commission of Texas, 123 Tex. 517, 73 S.W.2d 511. The Gilbert case, supra, is distinguishable from the case at bar. In that case, the Dayton & Xenia Railway Company operated an electric railway line between Dayton and Xenia. The Springfield-Xenia Transportation Company was a motor transportation system operating over the highways between Springfield and Xenia but the last-mentioned company was wholly owned and controlled by the Dayton & Xenia Railway Company. Before the time of the application for a certificate of public convenience and necessity in question in the case, the Springfield-Xenia Transportation Company handled all traffic originating at Springfield and destined to Dayton by carrying the same from Springfield to Xenia and there delivering it to the Dayton & Xenia Railway Company for transportation to Dayton. The arrangement became unsatisfactory and it was proposed to discontinue and abandon the electric railway between Dayton and Xenia and to substitute it with motor transportation owned and operated by the electric railway company. This was nothing more than a substitution of service. The railway company already operated between Xenia and Dayton and all that the public utilities commission did was to allow the railway company to carry on its business with motor vehicles instead of railway cars. Many states have held that in cases where railway companies change their transportation facilities from railroad cars to motor vehicles, that is nothing more than a substitution of service and introduces no new carrier or competition into the field. This is recognized in the above-mentioned case, the court stating [131 Ohio St. 392, 3 N.E.2d 48]: "Furthermore, the commission reiterated its previous observation that under the circumstances of the case the extension of the motortruck operation between Xenia and Dayton was but an improved and more convenient substitute for the traction service to be abandoned."

In the case at bar it is admitted that the appellee at all times has given direct service between Florence and Tucson, without interruption, without the necessity of changing busses. In the Wheeling case cited by Chief Justice Stanford, it appears that the certificate of public convenience and necessity complained of was granted

288

to the Eastern Ohio Transportation Company to operate from Barnesville, Ohio, to Cambridge, Ohio, through Bailey's Mills, Quaker City, Salesville, Lore City and Kipling. At the time of the application no transportation company was operating directly between Barnesville and Cambridge. There was no existing carrier giving service between those two territories. Cambridge is on a highway known as the National Pike. Barnesville is five miles south of the Pike. Before the time of the application in question a person desiring to travel from Barnesville to Cambridge would be compelled to take one bus at Barnesville and drive north five miles to the National Pike and there change buses. Definitely, that is not the situation in the case at bar. *It is to be noted that in the Ohio case service between Lore City and Cambridge was expressly excluded because there was an existing carrier in that territory.*

The Texas case cited by the Chief Justice (Texas Motor Coaches, Inc., supra) can have no application to the facts in the instant case because the laws of Texas concerning and governing common motor carriers are wholly different and distinct from the laws of Arizona. In Texas there is no requirement that, in the case of an application for a certificate of public convenience and necessity over a route or in a territory served by an existing carrier, the Commission must first find that public convenience and necessity requires additional service and then must state the additional service required and give the existing carrier reasonable time to meet the requirement. On the contrary —under the Texas statute the Railroad Commission has the right and power to grant a duplicate certificate although an existing carrier is in the field, without first finding what additional service is required and giving the existing carrier an opportunity to meet the same and the finding of the commission is final and conclusive unless it appears that it acted unreasonably, unlawfully and arbitrarily. See Vernon's Ann.Civ.St. Art. 911a, Secs. 3, 6, 7.

The Texas case is also distinguishable on the facts. There the existing certificate holder had a permit to operate motor busses between Dallas and Fort Worth on the south side of the Trinity River. An application was made for a new certificate operating between the same cities but on the north side of the river. The original certificate holder objected to the issuance of a new certificate. The railroad commission granted the new certificate of convenience and necessity for the parallel route which was to be on the north side of the river. The court in its opinion said [123 Tex. 517, 73 S.W.2d 513]: "The route over which appellee's permit was granted was a distinct and separate route north of the Trinity river running through some three or four towns and villages, and a developing rural area, substantially paral-

lel to the southern route and varying from three to six miles from it, and served communities not served, nor offered to be served, by appellant." The facts distinctly disclosed that the applicant for the additional certificate was going to travel on the north side of the river, and would pass through three or four towns or villages. In the case at bar, if it had been made to appear that there were several towns or villages along highway 80-89 via Oracle Junction to be served, then I would be of the opinion that the order of the commission was justified in finding that there was new, virgin, or additional territory to be served. Certainly the termini, Florence and Tucson, were in the territory to be served, and it is my opinion that the court should take judicial knowledge of the fact that these two termini constitute 99% plus of the territory to be served. The territory to be served contemplates the existence of people and the presence of passengers and baggage to be transported.

The question as to what constitutes "the territory already served" within the contemplation of the applicable statute is a question of fact to be determined from a consideration of economic as well as of legal principles.

In State v. Department of Public Works of Washington, 164 Wash. 237, 2 P.2d 686, 687, the court said: " * * * and one of the essential facts to be determined by the department before it can grant a certificate under the act is, is the territory already served. This essential jurisdictional fact must appear in the record."

In Suburban Transportation System v. Furse et al., 13 Wash.2d 345, 125 P.2d 266, at page 271, the court said: " 'The question, what is territory already served, is a question of fact. Before that fact can be determined, it requires a consideration of economic conditions, ofttimes involving expert testimony; a consideration of the kinds, means, and methods of travel; the question of population warranting additional facilities for transportation * * * increasing the population so as to ultimately make the venture a success.' In addition to those factors, it often becomes necessary, as in this instance, to consider also the topography, character, and condition of the country into which the service is to be introduced, and its relation to the nearest territory through which transportation service is already supplied. All of these factors were considered by the department in its determination that the area surrounding Eighth avenue south was not 'territory already served' by appellant. The record does not enable us to say the finding of the department was in that respect arbitrary and capricious, and, therefore, we will not disturb that finding."

In the case of Pacific Northwest Traction Co. v. Department of Public Works of Washington, 151 Wash. 659, 276 P. 566, 567, the court had before it the question of "What is the territory already served?" The Washington statute precluded the

granting of a new certificate of convenience and necessity in territory already served by a certificate holder. Under the statute, a certificate holder in territory already served was entitled to priority for a certificate in that territory. Briefly, the facts in that case were that the original certificate holder had a certificate to carry passengers and express between the cities of Seattle and Everett. The company operated on what was referred to as the "Old Pacific Highway." A new road was built between the two cities, called the "New Pacific Highway." These two roads, at the most distant point, were approximately six miles apart. The new road opened up 12 or 15 miles of new paving. The two roads converged and came together, on the north, in the city of Everett, and on the south, in the city of Seattle. Additional facts are set forth in the following quotation from that case, and are practically on a par with the fact situation in the case at bar. Quoting:

"The great bulk of the transportation between Everett and Seattle is through transportation, terminal to terminal, from one city to the other, or to points beyond. *Of the total transportation between the two cities, approximately 60 per cent. originates at or is destined to points north of the city of Everett. The amount of the local traffic picked up between the two cities is very small. Almost all of the 40 per cent. which does not originate at or is destined to points north of Everett originates in one city or the other and is destined to the other city. The country through which the new highway passes is thinly settled, and the amount of traffic to be derived from that territory cannot be said to be more than nominal.* From these facts, which are not in dispute, it must be concluded that the traction company under its present certificate serves not only the territory between the two cities, but the inhabitants of those cities as well and the territory to the north of Everett and to the south of Seattle. In addition to this, it serves the territory from the Snohomish county line to the city of Seattle over a certificate which had been issued to it, which, as stated, is a part of the new highway. The only portion that it does not serve is the local traffic along the 12 or 15 miles of new pavement opened in 1927.

"The facts stated bring the Pacific Northwest Traction Company within the meaning of the statute which provides that a certificate holder in territory already served by it has a prior right to another certificate which is to be issued to serve that territory." Emphasis mine.

By the majority opinion, any applicant is entitled to a certificate by merely showing that he is going to use some other road or trail across the desert between the termini other than the one being used by the existing certificate holder. The reversal of the trial court gains the sanction and approval of the Supreme Court of the state of Arizona to what I consider nothing more or

less than *muscling in,* in defiance of the statutes in such cases made and provided, and in contravention of previous decisions of this court. The judgment of the lower court should be sustained.