# INSLEY v. UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH
CIRCUIT.

No. 921.   Argued and submitted November 21, 1893. — Decided December 4, 1893.

As a District Court of the United States has jurisdiction under Rev. Stat.
§ 563, of all suits to recover forfeitures incurred under any law of the
United States, including forfeitures of a bail bond, the question whether
the forfeiture should be enforced by *scire facias* under Rev. Stat. § 716,
or by proceedings under a law of the State in which the court is held,
goes only to the remedy and not to the jurisdiction, and the action of the
District Court is binding in a collateral proceeding.

The rule that the death of a party to a suit, either pending the suit or after
judgment and before execution, abates the suit, does not apply to a case
where land has been sold upon execution, but no deed delivered.

THIS was a bill in equity brought by the United States to
redeem lot 1, block 104, Fort Scott, Kansas, the title to which
lot is now held by Elizabeth McElroy, the real defendant in
the case. A demurrer was originally filed to the bill upon the
ground of laches and was sustained by the court below; but
the decree dismissing the bill was reversed by this court,
*United States* v. *Insley*, 130 U. S. 263, and the case remanded
with a direction for further proceedings.

The substantial facts were that on August 3, 1869, one Moses
McElroy became surety upon a bail bond for the appearance
of Joseph H. Roe and C. A. Ruther, who had been arrested
upon a complaint charging them with a violation of the inter-
nal revenue laws. On October 12, 1869, the recognizance was
forfeited and a writ of *scire facias* ordered to issue from the
District Court of the United States for the District of Kansas
against the sureties, requiring them to appear and show cause
why the forfeiture should not be made absolute and execution
issue. This writ was served upon McElroy, who appeared and
moved to quash the writ. This motion was denied; the for-

feiture made absolute; judgment for $2000 entered against McElroy; and execution issued April 27, 1871, and levied upon the lot in question. This lot, with another also levied upon, had been bought by McElroy of one Bryant on August 5, 1869, for $6000. At the time of this purchase, and to pay for the property, McElroy borrowed of one Palmer $3500, for which he gave a mortgage upon the lots to secure the loan. On May 30, 1871, four weeks after the levy was made, Palmer brought suit to foreclose his mortgage, but did not make the United States a party defendant. On June 6, 1871, the United States bought lot one at the execution sale in satisfaction of its debt. On October 4, Palmer obtained judgment of foreclosure in the sum of $3764.16, with costs. On October 16, the sale to the United States was duly confirmed and a deed ordered. The deed, however, was not executed until October 30, 1883. On October 25, 1871, Palmer took out execution against McElroy, and on December 4 the property was sold under this execution, and bought in for the debt by Palmer. The sale was confirmed January 4, 1872, and a sheriff's deed executed to Palmer.

On January 4, 1872, the title stood as follows:

1. The property had been sold to the United States by sale confirmed October 16, 1871, on a second lien.

2. The property had been sold to Palmer by a sale confirmed December 26, 1871, on a first lien, the United States not being a party defendant.

3. The United States not having been made a party, had the right to redeem and treat the sheriff's deed as a mortgage in the hands of Palmer, and Palmer as a mortgagee in possession.

Nothing was done for over twelve years, when on November 28, 1884, the United States filed this bill, having never been in possession of the property. McElroy and wife remained in possession of this lot with consent of Palmer under an agreement to purchase, until the death of Palmer, in November, 1872, after which the agreement lapsed. Afterwards the Palmer heirs, desiring to sell, made another agreement with McElroy, who acted as agent for his wife, that they would sell the land to Mrs. McElroy, defendant herein. Payments on the property began and slowly progressed through a series of

years. The property had an earning capacity, and the rents and profits went to Moses McElroy. He died in August, 1881, leaving the property partly unpaid for. In the agreed statement of facts it was admitted that the agreement with the Palmer heirs vested the title and ownership in said land in Mrs. McElroy, except as affected by the claim of the United States in this action, if it should be determined that any such claim or interest existed. After the agreement of purchase had been made by defendant she improved the lands by erecting buildings at an expense of several thousands of dollars, collected the rents, and enjoyed the use and benefit of the property, the rents and profits exceeding by a small amount the principal and interest which would be due under the mortgage of 1869, by way of redemption. The property was finally deeded by the Palmer heirs to the defendant about five years after her husband's death, and after the filing of the bill in this suit.

Upon the hearing in the Circuit Court upon an agreed statement of facts, the bill was again dismissed, and the United States appealed to the Circuit Court of Appeals. The court reversed the decree of the Circuit Court, and a decree was directed in favor of the United States. From this decree an appeal was taken by Insley to this court.

*Mr. J. D. McCleverty,* for appellants, submitted on his brief.

*Mr. Solicitor General,* (with whom was *Mr. E. F. Ware* on the brief,) for appellees.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The question in this case is whether the proceedings by *scire facias,* taken by the United States to enforce the forfeiture of McElroy's recognizance, operated to divest his title to the lands in dispute.

(1) The argument of the appellants in this connection is

that, under Rev. Stat. § 1014, authorizing commissioners "to take bail in any State where he" (the accused) "may be found, and agreeably to the usual mode of process against offenders in such State," proceedings for the enforcement of bail bonds should conform to the practice in the State where the bond is sued; and that, as the statutes of Kansas do not authorize proceedings by *scire facias* in such cases, but require a formal action, termed in the Code of Kansas a "civil action" against the bail, this practice should also be pursued in the Federal courts; and hence that the judgment of the District Court of Kansas in this case rendered upon a writ of *scire facias* was illegal and void.

But we do not find it necessary to determine whether a *scire facias* was a proper remedy or not. It is a sufficient answer to the appellants' contention that the court had jurisdiction of the subject-matter under Rev. Stat. § 563, which confers upon District Courts jurisdiction of all suits for penalties and *forfeitures* incurred under any law of the United States; and § 716, conferring upon District Courts power to issue writs of *scire facias;* and also that the court had jurisdiction of the person of the defendant, who was not only served with the writ, but appeared and moved to quash the same, apparently for the same reasons which are now urged for holding the proceedings to be a nullity. If McElroy had desired to contest his liability further he should have prosecuted his writ of error from the Circuit Court, which he appears to have sued out, but subsequently dismissed. The error, if any were committed, did not go to the jurisdiction of the court, but only to the particular remedy pursued, and the action of that court in respect thereto was binding in a collateral proceeding. *Hendrick* v. *Whittemore,* 105 Mass. 23.

Nice distinctions were formerly drawn between actions of trespass and case, but it was never supposed that an error in that particular affected the jurisdiction of the court, or could be drawn in question collaterally. Even an objection that an action should have been brought at law instead of in equity may be waived by failure to take advantage of it at the proper time. *Wylie* v. *Coxe,* 15 How. 415, 420; *Reynes* v. *Dumont,*

130 U. S. 354, 395; *Clark* v. *Flint*, 22 Pick. 231; *Ludlow* v. *Simond*, 2 Caines' Cas. 1, 40, 56.

(2) The objection that McElroy, the judgment debtor, died in August, 1881, after the deed was ordered, but before it was actually executed by the sheriff, and that thereby the judgment became dormant, is equally untenable. It assumes that the general rule that the death of a party to a suit either pending the suit or after judgment and before execution abates the suit, applies to a case where land has been sold upon execution and no deed delivered. It is true that this court held in the case of *Ransom* v. *Williams*, 2 Wall. 313, that when a defendant died after judgment, and execution was subsequently issued without the notice required by the statute having been given to the representatives of the defendant, or the judgment revived by *scire facias*, the execution was a nullity, and all proceedings under it were void. But even in that case a doubt was expressed whether the execution would not be good, if it were tested before the death occurred. The law in such cases, however, acts upon the theory that the defendant is interested in the case, and, therefore, upon his death his personal representatives should be called in. In this case, however, the suit was not only not pending, but the judgment had been satisfied by the sale of the land, and there were no proceedings existing in which McElroy's estate could be said to be interested. The sale was confirmed and deed ordered October 16, 1871, while the death of McElroy took place ten years afterwards. After the property had been sold upon execution, and the United States had bid it in, and the sale was confirmed and the deed ordered, the defendant in the execution received credit for the amount of the sale, which amount, $2467, cancelled the judgment, and left it fully satisfied. There was no judgment to become dormant. In short, the whole proceedings between McElroy and the United States had ceased to exist. The United States stood only in the attitude of a purchaser of the land, with power to call upon the sheriff for a deed. Had the land been bid in by a third party and a deed ordered, it would scarcely be claimed that as to him the suit would have been abated, and yet as a matter of law the posi-

tion of the United States was precisely the same as would have been that of a third person purchasing the property.

There was no error in the conclusion of the court below, and its decree must, therefore, be ·                    *Affirmed.*