216 P.2d 404

PACIFIC GREYHOUND LINES v. SUN VALLEY BUS LINES, Inc.

No. 4988.

Supreme Court of Arizona.

March 13, 1950.

Jennings, Strouss, Salmon & Trask, J. A. Riggins, Jr., Henry S. Stevens, Burr Sutter; Baker & Whitney, all of Phoenix, attorneys for Appellant.

Jerman & Flynn, of Phoenix, attorneys for Appellee.

UDALL, Justice.

Pacific Greyhound Lines, a corporation, as plaintiff (appellant) filed this action on February 6, 1946, in the superior court of Maricopa County, praying for injunctive and equitable relief against the defendant (appellee) Sun Valley Bus Lines, Inc., a corporation. The trial court found against

the plaintiff on all of the issues, including a specific finding that plaintiff was guilty of laches. Judgment was thereupon entered for defendant and this appeal followed.

The right of the defendant to maintain certain of its operations as a common motor carrier of passengers, their baggage and express in territory where the plaintiff claims to have the exclusive right to operate, is the matter in controversy.

Collateral attack—Injunctive relief

■ At the outset we are met with defendant's contention that the instant suit is a collateral attack on the certificates of convenience and necessity under which it claims to be operating which were issued by the Arizona Corporation Commission. Defendant asserts that as a prerequisite to asking a court of equity for injunctive relief, it was necessary for the plaintiff to establish a lack of an adequate remedy at law. The legal remedy open to plaintiffs, so defendant contends, was to first apply to the Commission for a redress of its grievances, then if an adverse ruling was made to follow the statutory procedure for an appeal to the superior court. Plaintiff maintains that no question of collateral attack is presented for the reason it is not attacking the validity of defendant's lawfully issued certificates of convenience and necessity. It asserts that it recognizes the validity of such certificates issued to Sun Valley, but contends that the latter's operations are not in accordance with its certificates and are therefore unauthorized and illegal. In denying defendant's motion to dismiss, the learned trial court properly and necessarily held, and we think correctly so, that the instant proceeding was not a collateral attack upon the action of the commission in issuing the certificates to defendant. If a given certificate was issued by the Commission without jurisdiction, and such is shown from the records, then the rule prohibiting a collateral attack has no application.

In as much as the record discloses that the defendant was and is operating six schedules each way per day between Phœnix and Tucson, which operations are in direct competition with plaintiff, it is clear that if any of such operations carried on by defendant are illegal there is such an invasion of the plaintiff's rights as to entitle the latter to injunctive relief against such illegal competition. Such is the effect of our holding in Northeast Rapid Transit Company v. City of Phœnix, 41 Ariz. 71, 15 P.2d 951.

■ The operations of the parties (as common carriers) here in question are so involved it would be most difficult to present a true picture by words alone, hence we incorporate herein a rough map or diagram, prepared by the plaintiffs, which depicts the comparative routes operated by both Greyhound and Sun Valley. This includes the location of the communities served and the official numbers by which the Federal and State Governments designate such highways.

# COMPARATIVE ROUTES OF
# SUN VALLEY BUS LINES, INC. and
# PACIFIC GREYHOUND LINES

70

Inasmuch as some mention will be made of the Gila River, and such is not shown upon the map, we take judicial notice of the fact that this river, the general course of which is northwesterly, runs a short distance north of the towns of Florence and Sacaton and lies between Olberg and what is designated as South Sacaton Junction.

The plaintiff is now and for many years last past has been the owner of legal and valid certificates of convenience and necessity issued by the Arizona Corporation Commission authorizing it to transport passengers, their baggage and express, as a common motor carrier for compensation over many of the highways in the State of Arizona, including the three routes serving the communities lying between the cities of Phœnix and Tucson, shown on the foregoing map. These routes roughly are; (1) Phœnix by way of Florence Junction-Coolidge to Tucson, (2) Phœnix by way of Mesa-Ruins Junction-Coolidge to Tucson (with alternative routes as shown on the map between Phœnix and Chandler as well as in the Sacaton area), (3) Phœnix via Casa Grande to Tucson, (4) also other short routes that will be enumerated as the occasion requires. All of plaintiff's operative rights, where there is any conflict, are prior in time to those of the defendant's and none of its certificates of convenience and necessity are being challenged in these proceedings.

Generally speaking the foundation of defendant's operating rights came to it by assignment of certain certificates of convenience and necessity theretofore held by one R. B. Rodney, who was doing business as Mesa Airport Bus Lines. Without going into details, the latter's operations covered principally the following routes: (1) Mesa to Higley Airport (now known and hereinafter referred to as Williams Field), (2) Mesa to the airport Northeast of Mesa, known as Falcon Field, (3) Mesa to Lehi, (4) Chandler to Williams Field, (5) Mesa to Florence, via Williams Field and then over the Hunt Highway, passing through and serving Cantonment Camp nine miles south of Florence Junction, (6) from Cantonment Camp via Florence to Coolidge. It is apparent from the record that Rodney's operations, save and except No. 3, supra, proposed to serve only military fields, camps and cantonments. In fact as to his Mesa operations, they were virtually confined to transportation of passengers and their hand baggage originating in Mesa and destined to airports and business originating at airports and destined to Mesa. This is further borne out by the fact that when in October, 1942, these rights were transferred to the defendant and three new certificates issued in its name that on two of them it appeared the operations were authorized only for the duration of the war and a short period thereafter. It will be further noted that with the exception of route number (6), supra, all of the operations authorized were north

of the Gila River. The plaintiff is not questioning the validity of these certificates. The certificates challenged by these proceedings are the amended, supplemental and consolidated certificates issued directly to defendant which have added new territory piece by piece until defendant's activities have now mushroomed into full scale operations between Phoenix and Tucson.

Governing principles of law

Before considering plaintiff's assignments that the trial court erred in its conclusions of law to the effect that plaintiff was not entitled to the relief prayed for as to certain specific operations that are sought to be enjoined, we desire to enumerate some of the well established principles of law that become the yardstick by which the rights of these parties are in part to be measured. (1) The state's public policy respecting public service corporations is one of regulated monopoly, rather than a competitive system, and it would be an abuse of discretion for the corporation commission to authorize a motor carrier to enter into this class of business so long as an existing carrier, having a prior certificate of convenience and necessity therefor furnishes adequate service. Corporation Commission of Arizona v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443, 451. (2) Only the grantee named in a certificate of convenience and necessity may engage in business as a common carrier for hire under such certificate. Northeast Rapid Transit Co. v. City of Phoenix, supra. (3) The corporation commission cannot lawfully issue a certificate of convenience and necessity to an applicant seeking the right to furnish service of the same type as that rendered by a prior certificate holder, in the same area, until the prior certificate holder is notified by the commission of the application and is given an opportunity to increase its service to meet the needs of the public. Corporation Commission of Arizona v. Pacific Greyhound Lines, supra.

The corporation commission in issuing or denying a certificate of convenience and necessity performs a judicial function which imposes upon the commission the duty to hear before it condemns, to proceed upon inquiry and to render judgment only after trial. Therefore, a certificate of convenience and necessity represents the judgment of the commission reached in the same manner as a judgment of a court of record and it follows that in determining the validity of a given certificate of convenience and necessity the court can go behind what appears upon the face of the certificate, as it has both the right and duty to examine the application, order, etc. upon which said certificate necessarily rests. These instruments constitute the "record" which is comparable to "judgment roll" in a civil case. The orders and directions of the commission must support the certificate to render it valid.

### Laches

Plaintiff assigns as error the finding of the trial court that plaintiff had been guilty of laches in attacking the validity of certificates and amendments thereto under which defendant was operating or the unlawfulness of defendant's actual operations thereunder and was therefore precluded in a court of equity from asserting its claim for relief against defendant's infringement upon its prior operative rights. Plaintiff urges that in the field of state regulated monopolies the defense of laches cannot be asserted since the interest of the public is directly involved and paramount. The doctrine of laches is a form of estoppel. 19 Am.Jur., Equity, Sec. 493, p. 340. This court has adopted the rule that where public interest is involved no question of estoppel can be urged as between the parties as carriers. See Corporation Commission of Arizona v. Pacific Greyhound Lines, supra, wherein we said: " * * * the regulated monopoly, which is the public policy of the State of Arizona, was not established primarily for the benefit of the public service corporations affected thereby, but for the benefit of the general public, any benefits accruing to these corporations being merely incidental to the principal object of the rule. Such being the case, when the question involved is the carrying out of this public policy by a public agency, we think that no question of estoppel as between the carriers can arise, and that the commission must determine whether the certificate applied for shall issue on the basis laid down by the law."

Furthermore there is a well established principle of law that laches can not be urged as a defense to a suit to enjoin a wrong which is continuing in its nature. Howard & Co. v. Mahoney, 188 Okl. 89, 106 P.2d 267; Strong v. Sullivan, 180 Cal. 331, 181 P. 59, 4 A.L.R. 343; Burrall v. American Telephone & Telegraph Co., 224 Ill. 266, 79 N.E. 705, 8 L.R.A.,N.S., 1091, Hyams v. Amchir, Sup., 57 N.Y.S.2d 77.

We are of the view that even conceding plaintiff had been guilty of laches it could give no right to defendant to operate in violation of law. Certificates of convenience and necessity can only be acquired from the corporation commission by an affirmative showing that its issuance would best subserve the public interest and not by estoppel or laches. For the reasons stated we hold that the court was in error in holding that laches was a defense in this case.

### Phoenix-Chandler operations.

The certificate originally issued to defendant on October 20, 1942, authorizing operations between Phoenix, Florence and Coolidge provided that such operations should be "with no service between Chandler and Phoenix or between Mesa and Phoenix". This was in conformity with the application which expressly excepted this service.

Defendant bases its right to give service between Chandler and Phoenix on an

"Emergency Order Expanding Operations" entered by the Commission on November 30, 1942. This order recites, "That in conformity with suggestions from the Office of Defense Transportation relating to the elimination of duplicate service over highways by motor vehicle operators, an agreement has been reached between the City of Phoenix and the Sun Valley Bus Lines, under which, effective December 1, 1942, the City of Phoenix is withdrawing its passenger service between Phoenix on the one hand and Tempe, Mesa, Chandler, Williams Field on the other hand.

The order further recites that, "In order to accord adequate and satisfactory service to Chandler, it is necessary that *emergency* authority be granted to the Sun Valley Bus Lines to enlarge its operations to include traffic between Chandler and Phoenix in addition to the rights now held." (Em.Sup.)

The order then provides: "It is hereby ordered: that effective December 1, 1942, the Sun Valley Bus Lines be and is hereby authorized to expand its rights to include the handling of passengers between Chandler and Phoenix *until an application in regular form, which was filed today, for such expansion shall be heard and determined.*" (Em.Sup.)

Does the record disclose that an application for such right was ever filed or that a certificate of convenience and necessity was ever issued in relation to said order? The plaintiff's answer to both queries is no. In support thereof it points out that the Chief Clerk of the Motor Vehicle Division of the Commission testified that he had diligently searched the records of that office and could find neither an application upon which the above order was based nor any certificate in relation thereto. The defendant relies solely upon the presumption that public officials perform the duties required of them by law. When we take into consideration the fact that the order itself shows upon its face that it was entered ex parte without application, without notice and without a hearing, all of which is contrary to section 66-506, A.C.A. 1939, it would seem that the presumption of regularity is effectually overcome. Obviously there was no authority in the commission to issue such an emergency order and two of the three commissioners were frank enough to admit this as over their own signatures one wrote, "No legal authority for such order" and the other stated: "There may not be a legal authority but this is war and why try to hinder us winning the war."

Operative rights of common carriers can neither be granted or taken away in any such a high handed manner. The so called "emergency order" is without authority of and contrary to law and the Commission was wholly without jurisdiction to enter the same. Hence the trial court should have enjoined the defendant from giving local service between Phoenix and Chandler as its service was in direct competition

with plaintiff's legitimate operations. (See map.)

## Phoenix and Florence and Coolidge Operations via Junctions in Sacaton area, traversing State Highways numbered 87, 287.

· As heretofore pointed out, an analysis of the origin of all defendant's rights to operate into Florence and Coolidge clearly shows they were from certificates issued to Mesa Airport Bus Lines authorizing service to military establishments in the area and, except for the specific certificate authorizing defendant to render service between the Cantonment Camp via Florence to Coolidge, all such operations were north of the Gila River. Furthermore the original certificates restricted the holder to business originating in Mesa or business originating at the termini and destined to Mesa and no business could be accepted destined beyond such points. In other words there was no schedule service between major termini. Furthermore the operating rights granted were restricted to the duration of the war and a reasonable time thereafter. From then on the Mesa Airport Bus Lines extended its operations solely by means of extensions and amendments to its original certificate. Obviously the extension of its operations from Williams Field to Florence *passing through and serving* "Cantonment Camp" contemplated the direct route over what is known as the Hunt Highway and not the indirect route via Sacaton, Ruins Junction, etc.

Yet it is conceded that defendant's actual operations between Phoenix and Florence and Coolidge at all times have been by way of Mesa, Chandler, Olberg, (with alternate route through Sacaton) Ruins Junction to Coolidge and then back from Coolidge to Florence, utilizing the numbered State and Federal Highways shown on the map incorporated in this opinion.

Plaintiff asserts that defendant has no authority from the Commission nor any certificate of convenience and necessity to operate over the direct route just outlined. The defendant to justify its operations primarily relies upon the orders entered and amended certificates issued in connection with its application dated April 6, 1942, (Exhibit 40) for such direct service though the application actually reads "for an extension of Certificate." This application was in part opposed by the plaintiff. While the hearing was had on April 17, 1942, it was not until September 5, 1942, that the Commission made its decision granting the "rights as set forth" in the application. The amended certificate, however, issued the same date merely covered the old rights already held, viz: (1) between Florence and Mesa passing through and serving Cantonment Camp, (2) Cantonment Camp via Florence to Coolidge serving intermediate points. However, eleven days later the Commission entered an ex parte Supplementary Opinion and Order, which reads: "In the hearing in the proceedings herein, Pacific Greyhound Lines

objected to the issuance of a certificate of convenience and necessity to the applicant to operate between Coolidge and Florence on the one hand and Phoenix on the other hand due to the fact that it held operative rights over those routes. *It was stated that it would establish an additional service over the territory to meet the needs which were clearly shown at the hearing. The service was established but later discontinued. In view of this fact and since the territory is not being adequately served,* it is our opinion and we find that the application of the applicant herein to establish a service between Florence and Coolidge on the one hand and Phoenix on the other hand should be granted but only for the period of the duration of the war and 90 days thereafter, and it is so ordered." (Emp.Sup.) An amended certificate was then issued sanctioning such direct service with some restrictions as to local traffic between Chandler-Mesa and Phoenix.

We experience difficulty in reconciling the Commission's findings, italicized above, as to inadequate service by plaintiff on September 16, 1942, with the statement appearing in their order of September 5, 1942 to the effect, " * * * said Pacific Greyhound Lines were then instructed by the Commission to improve their service over the other portions of the application, *which instruction* has been carried out." (Emp.Sup.) Obviously if plaintiff was rendering adequate service on the latter date, (assuming it had been given notice of inadequacy) the intervening eleven days was not a reasonable period of time for it to bring its service up to the required standard.

The trial court expressly found "that there is no evidence in the record that a hearing was held before the Corporation Commission prior to the issuance of the supplementary opinion and order * * *." (Ex parte order, supra.) This being true the vague and indefinite order of the Commission was improvidently entered for as was held in Corporation Commission of Arizona v. Pacific Greyhound Lines, supra, the record must affirmatively show, " * * either that the plaintiff failed to furnish any service which it was directed to, or that it was unable to furnish the service offered by the applicant, or that the commission, when it had determined what service public convenience and necessity required, gave the plaintiff an opportunity to furnish it." These essential requirements were not met in the instant case hence that part of the order and certificate for direct service between Coolidge and Florence and Phoenix are wholly null and void for the reason that the Commission was without jurisdiction to issue the same. Therefore, injunctive relief should have been granted the plaintiff as to these operations.

### Sacaton Operations

The defendant admits that it has no certificate of convenience and necessity

expressly sanctioning its operations from North Sacaton Junction through Sacaton to Casa Grande Junction and back to South Sacaton Junction. It seeks to justify these operations by; (1) asserting that the roads in question are all on the Sacaton Indian Reservation and that inasmuch as there is no evidence in the record that the Secretary of the Interior ever granted permission to the State or County to construct such highways the corporation commission has no jurisdiction over same, (In other words, defendant is saying that it is no affair of the state if the defendant wants to operate over this highway.); (2) its claim that they have been operating under a permit from the tribal chief for which a fee of $25 per year is paid. In answer to the first contention we are entitled to presume that the State and County highway officials did their duty in procuring the necessary consent for the construction of these highways before spending public moneys thereon. The defendant as a common carrier being under the jurisdiction of the Commission may not operate as such carrier within the state without having a permit covering each specific operation conducted by it, Section 66-506, A.C.A. 1939, and the carrier may not deviate from the route prescribed. As more than a fourth of the state's area lies on Indian Reservations there is not a through road of any consequence in the state that does not cross one or more of such reservations. If defendant's contention were upheld our laws regulating common carriers would be wholly ineffective if not a nullity. The tribal chiefs (if any there be) have no more authority over common carriers than any other private citizen. This operation was unlawful and should have been restrained.

### Direct operations between Phoenix and Tucson and between Florence and Tucson, via Oracle Junction.

These operations are so closely related that we shall consider them together, the latter operation being an integral part of the former. It is admitted that L. A. Tanner, individually, on January 12, 1943, procured a certificate of convenience and necessity from the corporation commission to operate bus service over what was termed "new territory", i. e., from Florence via Oracle Junction to Tucson which franchise was not limited to local traffic. The present plaintiff at that time strenuously objected to the issuance of such certificate on the ground that it was over a "territory already served" by its operations from Florence via Coolidge to Tucson. Its objection was overruled and on appeal this court, one judge dissenting, upheld the action of the Commission. See Corporation Commission v. Pacific Greyhound Lines, 64 Ariz. 273, 169 P.2d 511.

At the time the instant case was tried in June, 1946, the certificate authorizing this service stood in the name of Tanner. We learn from the briefs (aliunde the record) that it was not until December 19, 1946, that the Commission authorized the transfer of same to Sun Valley Bus·

Lines, Inc. While it is true that L. A. Tanner, then and at all times since, owned all save one of the shares of capital stock of this defendant corporation, nevertheless owing to said litigation the legal transfer of the franchise under which the operations are now carried on could not be effected at an earlier date. Technically, therefore, it was error for the trial court at the time the judgment in question was entered to sanction Sun Valley operating this route when the certificate stood in the name of Tanner. See Northeast Rapid Transit Co. v. City of Phoenix, supra.

It is admitted that the defendant has no franchise expressly authorizing direct or through service between Phoenix and Tucson. Both parties agree (from statements appearing in their briefs as to matters dehors the record) that it was expressly stipulated in the amended order dated April 5, 1948, approving of the transfer of operating certificate from Tanner to defendant that "*Sun Valley Bus Lines, will not continue or institute a direct service from Phoenix to Tucson*". The defendant insists that its subsequent operations have been in accordance with the Commission's instructions. The plaintiff challenges this and stoutly maintains that defendant's practice (which is apparently sanctioned by the Commission) of selling one ticket from Phoenix to Florence and having the passenger get off the bus at Florence and buy another ticket from Florence to Tucson is merely a neat circumvention of the Commission's order prohibiting through service. Obviously the validity of operations subsequent to the trial is not before us on this record and hence we decline to pass thereon. The issues that were properly presented to the trial court, as to the matters now under consideration, have by reason of the changed conditions of operation become moot. This fact is recognized by both parties. We shall therefore not disturb the lower court's ruling denying injunctive relief as to these operations.

## Summary

We hold that the learned trial court erred in certain of its findings of fact and conclusions of law as heretofore pointed out. It appearing that plaintiff's rights have been invaded by defendant's illegal operations which are in direct competition with plaintiff's exclusive right to operate as a common carrier in such territory, the judgment of the lower court is reversed with instructions to enter judgment in favor of plaintiff enjoining defendant's operations (1) between Chandler-Olberg and Ruins Junction by way of State Highway 87, (2) between North Sacaton Junction and South Sacaton Junction by way of Sacaton and Casa Grande Junction, and (3) in giving service between Chandler and Phoenix.

Reversed with directions.

LA PRADE, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.