289 P.2d 406

**TUCSON RAPID TRANSIT COMPANY, a
corporation, Appellant,**

v.

**OLD PUEBLO TRANSIT COMPANY, a
corporation, Appellee.**

No. 5774.

Supreme Court of Arizona.

Nov. 8, 1955.

Darnell, Robertson, Holesapple & Spaid, and Clifford R. McFall, Tucson, for appellant.

Boyle, Bilby, Thompson & Shoenhair, Tucson, for appellee.

UDALL, Justice.

Old Pueblo Transit Company as plaintiff (now appellee) commenced this action praying for injunctive relief against the defendant (appellant) Tucson Rapid Transit Company. The defendant filed a counterclaim asking similar relief against the plaintiff, i. e., each party sought injunctive relief against the other for the respective operations complained of.

The case was tried upon plaintiff's complaint and defendant's counterclaim before the court, sitting without a jury, and at the conclusion thereof the court entered a decree granting plaintiff certain injunctive relief and denying the defendant the relief prayed for in its counterclaim. Defendant's motion for judgment or in the alternative for a new trial was denied, and this appeal followed.

For the sake of brevity the appellant-defendant, Tucson Rapid Transit Company, will hereafter be referred to as TRT, and the appellee-plaintiff, Old Pueblo Transit Company, will be referred to as OPT, and since the latter is the successor in title and interest of Roy Laos and Occidental Bus Lines, the term OPT should be understood, where required, as including such predecessors in interest.

TRT and OPT commenced the operation of motor bus service for passengers in and around Tucson about the years 1925–26. Generally speaking the operations of OPT were confined to routes and territory south and west of the center of Tucson, and TRT confined its operations to the north and east parts of the city. However, both companies maintained terminals in downtown Tucson. While there is no controversy in this case as to the nature and extent of the operating rights of the respective parties up to the year 1934, nevertheless the exhibits admitted in evidence, which are included in the voluminous record certified up to us on this appeal, include all proceedings had before the Arizona Corporation Commission (hereinafter termed the Commission) under the TRT and OPT dockets from the year 1925 to date of trial.

This suit in the main involves the competitive operations of the respective parties along the now heavily populated South Sixth Avenue, the main traffic artery south from downtown Tucson. South Stone Avenue, another main southbound street, flows into Sixth Avenue at 18th Street, which is about one-half mile south from the intersection of Congress and Stone—the generally accepted center of the city. The U. S. Veterans' Hospital is on Sixth Avenue about three miles south from the center of the city. The operations of OPT which were brought under attack by TRT's counterclaim are those north-south runs from President Street—which is one of the east-west streets south of the tract upon which the Government Hospital is located—to downtown Tucson. The competitive operations of TRT for which OPT was granted injunctive relief under its original complaint involve those over the route on South Sixth Avenue and Nogales Highway from President Street to a point about five miles further south, where the Tucson Municipal Airport is now located.

■ By legislative enactment, Sec. 66–506, A.C.A.1939, and this court's uniform interpretation thereof, this State has been and now is definitely committed to the doctrine of "regulated monopoly" of common carriers rather than that of "restricted com-

petition". Corporation Commission of Arizona v. People's Freight Line, Inc., 1932, 41 Ariz. 158, 16 P.2d 420; Pacific Greyhound Lines v. Sun Valley Bus Lines, 70 Ariz. 65, 216 P.2d 404. Notwithstanding this commitment the operations of TRT and OPT on South Sixth Avenue have been handled by the Commission in such a manner as to now bring these common carriers into a full-scale competitive position along the entire eight-mile route, thereby defeating the purpose of the statute. It may be well-nigh impossible for the courts to unscramble this unworkable and improper situation that has grown up, like "Topsy", but at least the learned trial court has made a commendable start in that direction.

■ There are two matters in issue on this appeal: first, the granting by the trial court of an injunction on OPT's complaint against the operations of TRT in excess of its certificated rights on South Sixth Avenue; and second, the denial of TRT's counterclaim seeking to enjoin certain operations of OPT on this Avenue between President Street and Congress. The facts being essentially different we shall for clarity's sake treat these two phases of the appeal separately, and where there is a conflict in the evidence, or inferences to be drawn therefrom we shall, under our well-established rule, consider it in the light most favorable to a sustaining of the judgment.

Original Complaint

For many years Roy Laos, doing business under the name of Occidental Bus Lines, was operating as a common carrier in the south part of Tucson. Later, on November 1, 1939, he was issued a certificate of convenience and necessity to serve quite an extensive area south of Indian School Road and the Veterans' Hospital, but north of the present site of the municipal airport. On April 25, 1941, Occidental was issued a certificate to operate from President Street (which is one block south of Indian School Road) south on South Sixth Avenue, then over to Nogales Highway and south to Los Reales Road, thence on out to the San Xavier Mission. This route gave bus service to and past the site of what is now known as the Municipal Airport. A transfer of all these rights was made to OPT in the year 1949, and the latter's present certificate, which include this route by the airport, has been extended by the Commission to the year 1959. The validity of OPT's certificates to serve this territory is not questioned.

After the United States' entry into World War II, the Federal Government, in the year 1942, made preparations to build a Modification Center for the Consolidated Vultee Aircraft Corporation on what is now the Municipal Airport property. This, it was anticipated, would involve the employment of several thousand persons at such plant. TRT made application to the

Commission on June 5, 1942, seeking a certificate of convenience and necessity authorizing it to render bus service for the transportation of passengers *to and from* the Modification Center and

"* *. * *from and into* the territory now served by applicant, by extending its route from its present terminus on South Sixth Avenue and President Street over South Sixth Avenue and Nogales Highway, a distance of approximately five miles." (Emphasis supplied.)

This application was noticed for hearing and a hearing was had thereon at which Roy Laos and his counsel were present. Thereafter an order was entered granting the application, and on July 9, 1942, TRT's certificate was amended to include this extended operation, effective until December 31, 1946. No petition for rehearing was filed by Laos, nor was there any effort made to obtain a court review of the validity of this order. At the trial of the instant case Laos gave as his reason for not directly testing the order that it would have put him in the light of being unpatriotic to have done so. He further stated:

' "I permitted them to have a permit, provided they wouldn't pick up passengers in my districts."

The conclusion seems inescapable that this operation was granted to meet a war emergency. This portion of the opinion and order of the Commission dated July 2, 1942, makes this crystal clear:

"The applicant herein seeks authority to extend its service to new and important units in the prosecution of the war program. The evidence conclusively disclosed the need for the service and that it will be a convenience to employees and army officials. * * * We are of the opinion and find that public interest will be served by affirmative action herein * * *."

Apparently the Commission was of the opinion that it would require the services of both common carriers to meet this need for transportation. The parties have stipulated that there is nothing in the Commission's records to indicate that prior to the issuance of this order Mr. Laos was directed or required to expand his service in the territory he was then serving, to take care of the anticipated increase of traffic due to the establishment of the Modification Center.

TRT in the year 1946 filed an application for the renewal of all its certificated routes—which included the route in question. This application was duly noticed for hearing and at the hearing OPT objected thereto. Further hearings were had and finally the Commission, on June 6, 1947, renewed TRT's certificate—including whatever authority was granted by the 1942 amendment—extending it to December 31, 1956. It should be noted that the Tucson Modification Center closed down permanently in August or September of 1946, hence there was no Consolidated Vultee Aircraft Cor-

poration business being carried on there at the time the renewal certificate was granted. While OPT did file a petition for rehearing, it did not commence an action in court to set aside the order, as is provided for under Section 69–249, A.C.A. 1939.

The next action taken by OPT was the filing of its complaint in the instant suit on April 28, 1950, which was nearly eight years after the original certificate was issued to TRT and practically three years after the renewal thereof.

The trial court predicated its judgment granting injunctive relief in favor of OPT upon the premise that the latter was entitled to continue operations as a common carrier over the route in question because (1) this was original OPT territory and the latter was the existing carrier; (2) the competitive operations of TRT in rendering *intermediate service* thereon was in excess of the authority granted either in the original permit or the renewal thereof, and (3) the certificate of convenience and necessity dated July 9, 1942 "expired on the cessation of the emergency for which it was granted on or about September, 1946."

TRT first contends that OPT's complaint for injunction is a collateral attack upon lawfully issued orders of the Commission; that these orders have become final and conclusive and hence cannot now be reviewed. In interpreting Section 69–247, A.C.A.1939, we have repeatedly held that the Corporation Commission, in rendering its decisions, acts judicially, and its decisions are conclusive, subject only to a testing thereof in court in the manner provided by statute. In the absence of pursuing such remedy, these decisions are not subject to collateral attack. Arizona Public Service Co. v. Southern Union Gas Co., 76 Ariz. 373, 265 P.2d 435; Winslow Gas Co. v. Southern Union Gas Co., 76 Ariz. 383, 265 P.2d 442; Phoenix R. Co. of Arizona v. Lount, 21 Ariz. 289, 187 P. 933, 937. In the instant case OPT did not see fit to follow the direct attack procedure outlined by statute to test the validity of the order and certificate granting the so-called "Consolidated" run to TRT in 1942 and renewed in 1947. The present suit is the first court attack thereon.

■ The law in this state is that if a given certificate issued by the Commission is void for lack of jurisdiction it may be collaterally attacked. Pacific Greyhound Lines v. Sun Valley Bus Lines, supra. We are, therefore, faced with the issue as to whether the Commission had jurisdiction to enter the orders and certificates in question. Concededly both common carriers were before it and the subject matter was peculiarly theirs to deal with. Hence, unless the stipulated fact that the existing carrier (OPT) was not given an opportunity to improve and expand its services to meet the increased travel needs incident to the wartime installation at the Modification Center (as is required by Section 66–506, supra) deprived the Commission of

jurisdiction to enter the challenged orders, they are final and conclusive on the parties. Great reliance is placed upon a statement appearing in the Sun Valley case, supra, to the effect that certain of the orders there in question were null and void. Immediately preceding this holding was a quotation from a previous Arizona decision setting forth the procedure which this court has directed the Commission must follow to satisfy the statutory requirements of Section 66–506, supra, as to opportunity to render the required increased service. Earlier in the opinion, however, it was clearly pointed out that the so-called "emergency orders" which were there declared void and operations thereunder enjoined were granted to Sun Valley without an application, without notice, without a hearing and without even the issuance of a subsequent certificate. Thus they were mere *ex parte* orders wholly lacking in due process. Hence this was the basic reason for our holding in that case—though admittedly a somewhat different implication might be drawn therefrom. In the more recent case of Tucson Warehouse & Transfer Co. v. Al's Transfer, 77 Ariz. 323, 271 P.2d 477, we again struck down an ex parte order of the Commission as being void and therefore vulnerable to collateral attack for lack of jurisdiction. The record makes clear that no ex parte orders are herein involved. We shall therefore consider the problem raised on this appeal as one of first impression and not governed by the doctrine of stare decisis.

By statute the Commission is the tribunal which is given the authority to determine when the public transportation needs demand the issuance of certificates of convenience and necessity to motor carriers. Under the provisions of Section 66–506, A.C.A.1939, if the application for a certificate asks to operate over a route or in a territory then being served by another carrier, the Commission can lawfully issue the competing certificate only if the existing carrier will not provide the service which the Commission determines public convenience and necessity demand. When such an application for a competing certificate is made, the petition and the statute necessarily present to the Commission for decision the question whether the existing carrier will or will not furnish the additional service. If it finds that the existing carrier will not, it may lawfully issue the competing certificate; if it finds the existing carrier will or fails to find it will not furnish this service the Commission cannot lawfully issue the second certificate. Should the Commission—in disregard of the statute—unlawfully issue the second certificate, it has committed a legal error in deciding a matter it has the authority to decide. However, having acted within the scope of its authority, although erroneously, its decision is not void and not subject to collateral attack but is merely an error in the exercise of jurisdiction which must be corrected, if at all, by the direct procedure provided by the statute. It may be the Commission committed a procedural

error in issuing these certificates without first giving the existing carrier an opportunity to furnish the additional service, but procedural errors in the exercise of jurisdiction cannot be questioned collaterally. Insley v. United States, 150 U.S. 512, 14 S.Ct. 158, 37 L.Ed. 1163; Tallman v. McCarty, 11 Wis. 401.

■ In all of the Arizona cases which upheld the proposition that the existing carrier must be given an opportunity to improve its service to meet the public need it is vital to note that the challenge to the power of the Commission was direct, via the statutory procedure to vacate or set aside orders of the Commission. See, Corporation Commission of Arizona v. People's Freight Line, Inc., supra; Arizona Corporation Commission v. Hopkins, 52 Ariz. 174, 79 P.2d 946; Corporation Commission of Arizona v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443; Betts v. Roberts, 63 Ariz. 337, 162 P.2d 423; Corporation Commission v. Pacific Greyhound Lines, 64 Ariz. 273, 169 P.2d 511; Corporation Commission v. Southern Pac. Co., 67 Ariz. 87, 191 P.2d 719; Whitfield Trans. v. Tucson Warehouse & Transfer Co., 78 Ariz. 136, 276 P.2d 954. We reaffirm these Arizona cases to the effect that if the Commission acts arbitrarily in refusing the existing carrier an opportunity to improve its service before granting another the right to operate in the former's territory it can be called to account in a direct proceeding for review.

■ As to this phase of the appeal we are of the opinion that the Commission had jurisdiction to enter the orders and certificates here drawn in question, therefore the rights actually granted TRT are not subject to collateral attack. Were we to adhere to any other rule there would be no finality to any Commission order. The difference between the case at bar and those Arizona cases in which Commission orders have been declared void (Sun Valley and Al's Transfer cases, supra) is that in those instances the Commission had no power to act at all, whereas in this case the Commission, if it erred, merely erroneously used its power. Furthermore, it is our view inasmuch as the Commission did have jurisdiction to issue these orders, the fact that they originally arose out of the war emergency and that there was a cessation of that emergency before the renewal was granted to TRT, is of no legal significance.

■ There remains the question whether OPT is entitled to injunctive relief on any other ground, even conceding its inability to now attack TRT's certificates of 1942 and 1946. The law in Arizona is well settled, that if a carrier is competing with another carrier without any certificate of convenience and necessity to support its action, it may be enjoined from such action. Northeast Rapid Transit Co. v. City of Phoenix, 41 Ariz. 71, 15 P.2d 951. Cf.

Pacific Greyhound Lines v. Sun Valley Bus Lines, supra; Tucson Warehouse & Transfer Co. v. Al's Transfer, supra. We believe it necessarily follows that if a carrier *exceeds* the bounds of its certificated rights, to that extent it operates without a certificate fully as much as if it were never certificated at all.

A careful examination of this entire record convinces us that the trial court had ample evidence to sustain its conclusion that TRT's operations in rendering intermediate service on this "Consolidated" run were in excess of the authority granted it by the certificate of 1942. None of the renewals thereof furnish any clear evidence that the Commission was expressly expanding the service to be rendered under the original certification. As heretofore pointed out the service authorized was "to and from" the Modification Center, and "from and into" the territory then served by TRT, i. e. a special one-stop service. It appears from the record that in the beginning this was the only type of service to be rendered. It was later that these operations mushroomed into an intermediate full-scale "block to block" service. We are therefore of the opinion that OPT was and is entitled to injunctive relief insofar as this excess service is concerned.

### Counterclaim

By its counterclaim TRT sought to enjoin OPT's operations as a common carrier of passengers over the route from Broadway Street and Stone Avenue in Tucson, south on Stone Avenue to 18th Street and Sixth Avenue, thence south on South Sixth Avenue to Indian School Road and/or President Street (save and except that portion of the route between 22nd and 29th streets on South Sixth Avenue over which there is no dispute).

TRT asserts the trial court erred in denying it injunctive relief on its counterclaim for the reason and upon the grounds (a) that originally this was its territory and it had certificates of convenience and necessity from the Commission to serve such area; (b) that the Commission in the years 1934 and 1936, in granting OPT certificates to competitively operate over practically the same routes, was acting in excess of its jurisdiction because TRT was never at any time ordered or directed by the Commission to increase, extend or improve its service; (c) that this was an invasion of its territory and that all orders and certificates, including amendments and renewals thereof, issued to OPT, are illegal, void ab initio and of no force or effect, hence can be collaterally attacked at any time.

It will be seen that this presents the identical legal question as that decided earlier in this opinion. We are of the view that TRT cannot in this manner attack the orders of the Commission above referred to for the reason that the rights actually

granted OPT are not now subject to collateral attack. We hold, therefore, that the trial court was correct in denying any injunctive relief on the counterclaim.

## Conclusion

The judgment of the trial court denying TRT relief under the counterclaim is affirmed. That portion of the judgment completely enjoining TRT from operating as a common carrier on the "Consolidated" run is set aside. However, even though the relief granted thereunder was beyond what was warranted, this court under the provisions of Section 21–1832, A.C.A.1939, is expressly given the power to modify any judgment or order appealed from and to render (or direct the trial court to enter) such judgment or order as the court below should have entered. We therefore direct that the trial court enter judgment enjoining TRT from rendering any intermediate service (i. e. anything other than a "one-stop" operation) along South Sixth Avenue and Nogales Highway (U. S. Hwy. 89) from President Street to the Tucson Municipal Airport. Each party to bear its own costs on appeal.

Judgment affirmed in part and modified in part with directions.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.