398 P.2d 114

The ARIZONA CORPORATION COMMIS-
SION, etc., Reliable Transportation Com-
pany, and Arizona Tank Lines, Inc., Appel-
lants,

v.

PACIFIC MOTOR TRUCKING COMPANY,
a corporation, and Consolidated Freight-
ways Corporation of Delaware, a corpora-
tion, Appellees.

No. 7154.

Supreme Court of Arizona.

En Banc.

Dec. 30, 1964.

Rehearing Denied Feb. 2, 1965.

Robert Pickrell, Atty. Gen., and Alvin E. Larson, Asst. Atty. Gen., for appellant Corporation Commission.

Lawrence C. Cantor, Phoenix, for appellants Reliable Transportation Co. and Arizona Tank Lines, Inc.

Evans, Kitchel & Jenckes, Phoenix, for appellees.

SCRUGGS, Justice.

This is an appeal by the Arizona Corporation Commission, Reliable Transportation Company, and Arizona Tank Lines, Inc., from the judgment of the Superior Court of Maricopa County granting a peremptory writ of prohibition against the Arizona Corporation Commission. The Arizona Corporation Commission, the respondent in the trial court, when referred to herein in its individual capacity, will be designated as the Commission. Reliable Transportation Company and Arizona Tank Lines, Inc., the intervenors-respondents below, and the Arizona Corporation Commission, when referred to herein collectively, will be designated as the appellants. Pacific Motor Trucking Company was the petitioner in the trial court and Consolidated Freightways Corporation of Delaware intervened as a petitioner, and both will be referred to herein as appellees.

Prior to January 1, 1955, appellees were the holders of intrastate certificates of convenience and necessity issued by the Commission. These certificates were not restricted to particular classes or types of commodities and authorized appellees to transport freight, express and property.

In February, 1959, appellee Pacific Motor Trucking Company sought to become a party to a petroleum hauling tariff. On March 23, 1959, pursuant to a complaint by appellants Reliable Transportation Company and Arizona Tank Lines, Inc., the Commission directed an order to Pacific Motor Trucking Company to show cause "why Local Freight Tariff No. 20-A should not be suspended and why petroleum products in bulk should not be excluded from your certificates."

On May 4, 1959, the Order to Show Cause was heard by the Commission. Appellee Pacific Motor Trucking Company appeared and outlined its efforts to transport petroleum products and advised the Commission that it was ready, willing and able to transport petroleum and petroleum products in bulk in tank vehicles. At the conclusion of the hearing, the Commission took the matter under advisement.

On August 3, 1959, the Commission issued a Notice of Proposed Adoption of Rule and Order providing, in pertinent part, as follows:

"That from and after this date, to-wit: August 3, 1959, no carrier whose certificate reads 'property or freight', or 'freight', 'freight and general commodi-

ties', shall transport petroleum products in bulk within the State of Arizona, unless their certificate so reads that they may transport petroleum products in bulk, or unless they show cause to this Commission that they have, prior to August 3, 1959, transported petroleum products in bulk in specialized equipment."

Pursuant to said notice, appellee Pacific Motor Trucking Company appeared before the Commission at the hearing on September 9, 1959, and protested the adoption of the General Order. Said appellee argued that its failure to have transported petroleum products prior to August 3, 1959, resulted solely from the Commission's failure to approve the company's participation in certain tariffs, a matter which was still under advisement. At the conclusion of the hearing on the General Order, a majority of the Commission ruled that the proposed General Order be adopted.

On October 5, 1959, appellee Pacific Motor Trucking Company petitioned this Court for a Writ of Mandamus and Prohibition requesting that it order the Commission to accept the tariff with Pacific Motor Trucking Company as a participating carrier therein and prohibit the Commission from adopting the proposed General Order. The petition was denied without prejudice on October 27, 1959. On this same day, Pacific Motor Trucking Company filed a

petition in the Maricopa County Superior Court praying for an alternative writ of prohibition prohibiting the Commission from in any way denying its right to join as participating carrier in local tariff and prohibiting the Commission from adopting the proposed General Order. The alternative writ was immediately granted by the lower court on October 27, 1959, on an ex parte application. Intervenors joined on both sides, answers were filed to the petition, and on February 10, 1960, Pacific Motor Trucking Company filed a Motion for Summary Judgment. This motion was granted May 31, 1960, in addition to an order granting a peremptory writ of prohibition. The peremptory writ prohibited the Commission from:

"(a) Entering any order or decision as a result of the Order to Show Cause, dated March 23, 1959, which would limit, restrict or delete from Pacific Motor Trucking Company's Certificates of Convenience and Necessity the right to transport petroleum products in bulk; and

"(b) In any way proceeding to deny Pacific Motor Trucking Company's right to join as a participating carrier in Local Freight Tariff No. 20–A; and

"(c) Adopting the Proposed General Order, * * *"

On June 22, 1960, appellants filed a joint Notice of Appeal from the orders entered by the trial court.

■ Although several assignments of error have been raised by the appellants, the sole issue to be determined on this appeal is the propriety of the Superior Court in issuing a writ of prohibition against the Commission in this case. This Court, in reviewing the granting of a writ of prohibition by a lower court, will not consider as an original proposition whether it would have granted such a writ, but restricts its review to whether the lower court abused its discretion. State Board of Technical Registration v. McDaniel, 84 Ariz. 223, 326 P.2d 348.

In this case, the Commission, pursuant to its Constitutional and statutory authority, attempted to put into effect a General Order to restrict carriers, in the interest of safety, from carrying petroleum products in bulk unless they had prior thereto carried such products in bulk in specialized equipment or unless their certificate of convenience and necessity permitted them to carry such products in bulk.

A.R.S. § 40–610C provides:

"The commission may at any time for good cause suspend a certificate or permit, and, upon not less than five days notice to the grantee of a certificate or permit, and after opportunity to be heard, may revoke or amend a certificate or permit."

■ It has long been the rule in Arizona that unless the Commission finds that a common carrier will not furnish the services required by its certificate of convenience and necessity, the Commission cannot lawfully terminate or revoke said certificate, nor can the Commission permit another to invade the field of operation of such a carrier. Tucson Rapid Transit Co. v. Old Pueblo Transit Co., 79 Ariz. 327, 289 P.2d 406; Whitfield Transportation v. Tucson Warehouse & Transfer Co., 78 Ariz. 136, 276 P.2d 954; Pacific Greyhound Lines v. Sun Valley Bus Lines, 70 Ariz. 65, 216 P.2d 404; Corporation Commission v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443; Arizona Corporation Commission v. Hopkins, 52 Ariz. 174, 79 P.2d 946.

■ The order promulgated by the Commission on August 3, 1959, terminated the certificate of convenience and necessity of appellees to the extent that it limited their general certificates as common carriers to exclude therefrom the transportation of petroleum products in bulk. As the Commission did not give the appellees an opportunity to meet the safety requirements contained in its order of September 9, 1959, it exceeded its jurisdiction, and the peremptory writ of prohibition was properly issued by the Superior Court of Maricopa County.

■ This holding in no way affects the power of the Commission to adopt regulations to promote safety in the transportation of petroleum products in bulk, but if and when it does adopt such regulations,

the same must be so worded as to permit affected common carriers holding certificates of convenience and necessity to improve their services so as to comply with any safety regulation adopted. The regulation effective August 3, 1959, does not do this, but modifies the meaning of the words "property or freight," or "freight," or "freight and general commodities," to exclude therefrom that which had theretofore been encompassed thereby, to-wit, petroleum products, and to this extent modifies the existing certificates without giving the carriers an opportunity to meet the "safety regulation."

The judgment of the lower court is affirmed.

LOCKWOOD, V. C. J., and STRUCK-MEYER, J., concur.

UDALL, Chief Justice (specially concurring).

I agree with the result reached by the majority, however, in view of the nature of the attack made on the general order or rule by the petitioners in their brief, I feel constrained to more fully express my reasons for affirming the judgment and holding the rule invalid.

The petitioners argue that the rule in effect modified their certificate and that unless they are given a hearing on the matter in accordance with the elementary requirements of due process, the Commission acted in excess of its jurisdiction. It should be emphasized that when an administrative body such as the Commission here, promulgates a general rule under proper delegated authority, they are performing a legislative-like function as opposed to a judicial or adjudicative function. A general rule thus promulgated is not invalid because it was adopted without affording every individual affected thereby an adjudicative hearing. Air Lines Pilots Association, International v. Quesada, 276 F.2d 892 (2nd cir. 1960); United States v. Berwind-White Coal Min. Co., 274 U.S. 564, 47 S.Ct. 727, 71 L.Ed. 1204 (1927); Willapoint Oysters v. Ewing, 174 F.2d 676 (9th cir. 1949). See generally, 1 Davis, Administrative Law Treatise, Chapters 5, 6, and 7 (1958).

If the Commission were required to hold adjudicative-type hearings before they could adopt a general rule it may subject the Commission to such an intolerable burden which might well render it impossible for it to effectively discharge its duties. See A.R. S. §§ 40–604, 40–605, 40–606 (1956). The only hearing required for "rule-making" is a general "public" hearing pursuant to A.R. S. § 41–1002 (1956) which was held in this case.

The rule in this case is invalid for the reason that it contravenes the established "regulated monopoly" policy of this state and is therefore void. See Tucson Rapid Transit Co. v. Old Pueblo Transit Co., 79 Ariz. 327, 289 P.2d 406 (1955). The effect

of the rule in this case would be to take away from the common carrier a portion of its existing "market" and allow additional common carriers along with the original carrier to compete for a certificate to serve that portion of the market (petroleum products in bulk) severed from the original market by operation of the rule. Under the "regulated monopoly" policy of this state, the original carrier must first be allowed the opportunity to serve all portions of his original market before another carrier can be eligible to "invade" the market. Whitfield Transportation v. Tucson Warehse. & T. Co., 78 Ariz. 136, 276 P.2d 954 (1954).

For the foregoing reason the rule is invalid and the judgment of the superior court should be affirmed.

BERNSTEIN, Justice (concurring).

The Corporation Commission has attempted to throw up a smoke screen and justify the order involved here as a safety measure. It is true that A.R.S. § 40–605(2) enacted in 1933, under which the Commission did not purport to act, authorized it to, "Regulate * * * the safety of operations of each common motor carrier." In 1950 the legislature adopted the Uniform Act Regulating Traffic on Highways, A.R.S. § 28–601, et seq. This latter act is a comprehensive code and includes a chapter on "Equipment". Furthermore, A.R.S. § 28–962B specifically authorizes and directs the *State Highway Commission* "to promulgate

such additional regulations governing the transportation of explosives and other dangerous articles upon the highways as it deems advisable for the protection of the public." The legislature contemplated by the 1950 act, a comprehensive system of safety regulation, administered by the Highway Commission, and covering all carriers of dangerous articles including petroleum products. The Corporation Commission in law, as it is in fact, is solely an economic regulatory body, and cannot use "safety" as a subterfuge to reach an economic result. It cannot do indirectly that which cannot be done directly.